FREEMAN *v.* STATE

No. 40040          October 8, 1956          89 So. 2d 716

*John Farese,* Ashland, for appellant.

*J. R. Griffin,* Asst. Atty. Gen., Jackson, for appellee.

KYLE, J.

The appellant, Lincoln Freeman, was tried and convicted at the August 1955 Term of the Circuit Court of Marshall County on a charge of murder in the killing of O. T. Holt, and was sentenced by the court to imprisonment in the state penitentiary for the term of his natural life. From that judgment he prosecutes this appeal.

The killing occurred sometime after midnight on July 24, 1954, at a picnic for members of the colored race on the Levi Bell farm, a few miles northwest of the City of Holly Springs. The picnic was attended by several hundred members of the colored race. The record does not show whether the moon was shining or not. But the grounds were illuminated by torches placed in the heads of jugs.

It appears from the testimony of the State's witnesses that the appellant, accompanied by Douglas Burton, Almerth Cowan and Ora Mae Warren left Holly Springs about 8:00 o'clock p.m. to drive to the picnic. As they were leaving town he stopped his car in front of the Ford place and picked up O. T. Holt, who had asked permis-

sion to go to the picnic with him and the other members of his party. The appellant arrived at the picnic grounds about 9:00 o'clock p.m., and parked his car near the entrance to the picnic grounds. O. T. Holt then handed to the appellant a bag of money and a paper sack and asked that the packages be placed in the glove compartment of the car. The appellant placed the packages in the glove compartment and locked the car. The members of the party then separated. Sometime after midnight, the members of the party reassembled near the parked car preparatory to departing for their homes,—all except O. T., who was not with them. The appellant went back into the picnic grounds to look for O. T. and found him in a dice game at the foot of a hill a considerable distance from the place where the car was parked. O. T. appeared to be winning. The appellant tapped him on the shoulder and said to him, "Let's go." O. T. told the appellant to wait a minute until he "dropped off the dice," and O. T. gave the appellant a dollar bill which he tore into two pieces to hold for him. He then rolled the dice again and gave the appellant a ten-dollar bill and a five-dollar bill. Finally, O. T. "fell off" and stated that he was ready to go. A few minutes after Holt and the appellant left the dice game several shots were fired; there were cries for help; and O. T.'s body was found lying in a puddle of blood only a short distance from the place where the dice games were being played.

The body was picked up a short time thereafter by a local undertaker, who testified that the deceased had been shot in the chest and was dead when he arrived at the scene of the killing. The bullet had entered the right chest and had come out about the backbone.

The appellant was arrested a few hours after the shooting and was questioned by Asa Holbrook, night watchman and marshal of the City of Holly Springs, in the presence of the chief of police and the sheriff, and was again questioned by the sheriff, in the presence of the

county attorney, on July 26, in the back room of the sheriff's office. All of the above mentioned officers testified during the trial. The statements which the appellant made to the officers concerning his own movements during the night and the events which led up to the shooting were substantially the same as the statements which he made to the jury during the trial in the circuit court.

The State's proof consisted mainly of the testimony of Ora Mae Warren, Douglas Burton, Gus Tuggles and Mose Faulkner.

Ora Mae Warren testified that she went with the appellant to the picnic, and that Douglas Burton, Almerth King and O. T. Holt went with them in Link's car. After they got to the picnic grounds the members of the party separated. They met back at the merry-go-round sometime after midnight—all except O. T., and Link asked them if they were ready to go home. They said they were ready and all went down to the roadside where the car was parked—all except O. T., who was not with them. Link asked where O. T. was and Ora Mae told him that O. T. had said that he was going to gamble. Link then said he would go back and get O. T. The other members of the party waited at the car. A few minutes later they heard someone say that O. T. had been shot. They then went back into the picnic grounds to find out about O. T. and met Link coming toward the car. Link said, "Ora Mae, they tell me O. T. have been shot five times." Ora Mae and Douglas and Link then walked down the hill to the place where the dice games were being played. Ora Mae found O. T.'s body lying on the ground not far from the dice game, and Ora Mae and Douglas walked over and looked at the body, but Link did not go with them. Ora Mae stated that on their way back to town Link said to her, "Ora Mae, don't say anything about what I told you on the ground the second time, because I don't want to be involved, for I have a wife and family." Ora Mae said to him, "You didn't kill him, did you?" Link said,

"No, I didn't see him." Ora Mae stated that Link was wearing a white cap and a light blue tail-out shirt when they went to the picnic. On cross-examination Ora Mae stated that she and O. T. worked at the same place; and she stated that when they got to the picnic, Link unlocked the door of the glove compartment of the car and O. T. put a bag of money which belonged to the cafe where O. T. worked, and also a paper sack, which O. T. said had some shorts in it, in the glove compartment, and Link locked the door of the car. When Link, Ora Mae and Douglas got back to town, after the killing, Link unlocked the glove compartment and handed the sacks which O. T. had left in the car pocket to Ora Mae. Ora Mae stated that she saw no gun at any time that night.

Douglas Burton's testimony was substantially the same as that of Ora Mae Warren.

Gus Tuggles testified that he was at the dice game when the appellant walked up to O. T. and touched him on the shoulder and said, "Let's go." O. T. said to the appellant, "I'se gwine in a few minutes, when I fall off." Finally, the appellant said to O. T., "Fellar, I'se got to go", and O. T. said, "All right, I'se gwine directly." O. T. then tore a one-dollar bill in two and handed both pieces to the appellant and said, "Keep this, I might lose it." O. T. also handed the appellant a ten-dollar bill and a five-dollar bill. A few minutes later O. T. got up to leave, and as he was leaving he gave Gus Tuggles and Venus Alexander each a one-dollar bill. Tuggles stated that he then went up the hill to get something to eat. The appellant and O. T. appeared to be leaving the dice game about the same time. The appellant was wearing a white short sleeve shirt, with the tail worn outside, white slippers and blue pants, and what looked like a white cap. Tuggles stated that about six or eight minutes after he left the dice game he heard the pistol shots and someone said that O. T. had been killed. Tuggles stated that the day after the shooting he found a white cap and 35 cents

in money about 50 feet from the place where O. T.'s body was found.

Mose Faulkner testified that he was at a crap game, sitting down, when the killing occurred. He was not gambling. He did not know the appellant or O. T. Holt at that time. But he heard a shot and bent over in the game, and then raised back up and heard another shot, and then he heard a man say, ''Don't shoot, don't shoot me Link, you can get all I got.'' He called the name ''Link'' twice. The witness stated that Link then slapped his hand in his pocket and shot O. T. again. The man who did the shooting had on a white nylon shirt with the tail out. He had on a white cap. The witness stated that he was about 30 feet from the deceased when he was shot. He stated that after the shooting O. T. called ''Gus'' twice. He said, ''Oh Gus'', and that was all he said. The man who shot him then went in his pocket and got the money and walked on off. The witness was asked whether the man who shot the deceased was the size of Link Freeman or not. His answer was ''Yes, sir.'' The witness stated that the grounds around the crap games were lighted up with torches. The game that he was watching before the shooting was not the game that O. T. was shooting craps in. The witness stated that he saw O. T.'s assailant get some money out of his pocket— ''I was looking right at him.''

Willie Stewart, commonly known as ''Bubba'', testified that he was with O. T. and Link on Wednesday night before the Friday night picnic at a cafe down on the roadside on Highway No. 7, where a crap game was going on, and that O. T. had won $40 in a crap game the night before he was killed and Link was the heaviest loser.

The appellant, testifying in his own behalf, stated that he was working at Swift & Company's Refinery and was making $52.60 per week at the time he was arrested. He stated that he received his pay on Friday afternoon, and

went to the picnic that night. Douglas Burton, Ora Mae Warren, Almerth Cowan and O. T. Holt went with him. When they arrived at the picnic grounds O. T. gave him a bag of money and a paper sack which he placed in the glove compartment of the car. He did not know what was in the sack. The members of the party then separated and it was not until sometime after midnight that they reassembled to go home. When they got down to the place where the car was parked, O. T. was not with them; and the appellant went back to the picnic grounds to get O. T. He found O. T. at a dice game, and asked him if he was ready to go home. O. T. said, "All right, wait a minute until I drop off the dice." O. T. gave the appellant a one-dollar bill in two pieces to hold for him, and then shot again and gave the appellant a five-dollar bill and a ten-dollar bill to hold for him. O. T. then called a nine and "fell off", and said he was ready to go. As they left the dice game, the appellant walked a few steps ahead of O. T. He heard someone call O. T. by name. The appellant told O. T. that he was going on to the car. The appellant then heard some shooting 15 or 20 yards behind him, and he heard the man that did the shooting say, "Give me my g.. d.. money." He then heard O. T. say, "I will give it to you." The appellant thought that he heard five shots, but he was not positive. He then ran down to the car and told the others what had happened. The appellant stated that he was wearing a white T-shirt and a black pair of shoes. He had left his cap on the seat of the car. The appellant stated that, when he got back to Holly Springs, he unlocked the pocket compartment of his car and gave Ora Mae the paper sack and the bag of money that belonged to O. T. He did not open either package at any time and did not know how much money there was in the bag. The appellant stated that he did not know who shot O. T. He denied that O. T. had let him have a gun when they got to the picnic grounds; and he stated that he did not put a gun in the pocket of his car.

Buster Martin, Jimmie Clark and Oziah Stevenson testified that they were present when O. T. was shot, but none of them knew who did the shooting. All of them testified that the man who did the shooting had on a white shirt. Martin and Clark testified that the man who did the shooting was a larger man than the appellant; Stevenson testified that he was about the heighth of the appellant.

The first point argued by the appellant's attorney as ground for reversal on this appeal is that the evidence upon which the appellant was convicted was circumstantial and was not sufficient to prove the appellant's guilt beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis. It is argued that none of the witnesses, who actually saw the shooting could identify the appellant as the gunman, and that almost all of the witnesses who actually saw the shooting testified that the appellant did not appear to be the man who shot the deceased.

The evidence in this case, however, was not entirely circumstantial. Mose Faulkner's testimony was that of an eyewitness. Buster Martin, Jimmie Clark and Oziah Stevenson also testified as eyewitness. Mose Faulkner was asked on cross-examination, "But today you are telling this jury that you saw Link Freeman shoot O. T. Holt?" And his answer was: "I did see him, I was standing as close from here to that door over yonder to him looking right at him, when all three of the shots were made." Mose was again asked the question, "It wasn't too dark and you set here and tell this court today that you saw this man shoot O. T., is that what you say?" And his answer was, "That is what I say."

There was of course a sharp conflict between Mose's testimony and the testimony of Buster Martin, Jimmie Clark and Oziah Stevenson concerning the identity of the appellant as the perpetrator of the crime. Except for that, Mose's testimony concerning what he saw and

heard was corroborated in its main aspects by the testimony of the other three witnesses. Buster Martin testified that the man who did the shooting fired three shots, and then "felt in the fellow's pockets and took some greenbacks out of his pocket;" and after he walked off O. T. started to calling, "Gus, come here Gus." Jimmie Clark testified that he was only 15 or 20 feet from O. T. when O. T. was shot; that he heard someone say, "Hand it over," and right after that he heard three shots, right along in a line; but he did not hear anyone call Lincoln Freeman's name, and he did not hear anyone say, "Come here, Gus." Oziah Stevenson testified that three shots were fired and he heard someone say, "You can get it. * * * You can get it all." He then heard the man who was shot call "Gus" twice.

The verdict of the jury in this case does not rest entirely upon the testimony of Mose Faulkner. Much of the evidence was circumstantial and pointed strongly to the appellant's guilt; and the acts and conduct of the appellant after the homicide are not easy to reconcile with a belief of his innocence. The appellant had left the dice game with the deceased only a few minutes before the shooting occurred. He was the last man seen with the deceased after they left the dice game; and according to the appellant's own account of the killing, the shooting took place only 15 or 20 yards behind him. The appellant left the scene of the shooting immediately and made no effort whatever to find out for himself what had happened to O. T.; and when Ora Mae and Douglas Burton, after hearing that O. T. had been killed, went to the scene of the killing and walked over and looked at O. T.'s body, the appellant went with them only a part of the way, and then turned back. While the parties were enroute back to Holly Springs, the appellant told Douglas and Ora Mae not to say anything about him having gone down there to look for O. T., or what he had told Ora Mae on the picnic grounds, "because I don't want to be

involved, for I have a wife and family.'' Ora Mae and Douglas testified that the appellant wore a white cap to the picnic, and a white cap was found the next day a few feet from the spot on the picnic ground where the deceased had fallen.

██ ██ It is undoubtedly true that in a case of this kind the evidence relied upon by the State to establish the identity of the accused as the perpetrator of the crime must be such as to leave no reasonable doubt as to his identity. But it is not essential that this proof be made by the testimony of eyewitnesses. Circumstantial evidence may be sufficient. And in a case where there is both direct and circumstantial evidence, as in this case, the fact that there is a conflict in the testimony of the witnesses does not necessarily mean that the testimony is insufficient to sustain a conviction.

In Coleman v. State, 155 Miss. 482, 124 So. 652, the Court held that in a prosecution for robbery, the positive and unequivocable testimony of the state witness identifying the defendants as the persons who robbed him, such witness not being impeached in any manner known to the law, was sufficient to sustain a conviction, although several witnesses testified for the defendants to an alibi. In Cody v. State, 167 Miss. 150, 148 So. 627, the Court held that the wife's testimony identifying the appellants as the slayers of her husband, who was killed by gun shots about 1:00 o'clock a.m. on the front porch of their home, was sufficient to sustain a conviction of the slayers.

██ ██ The jurors are the judges of the credibility of the testimony of the witnesses, the weight to be attached to the testimony of each witness and the inferences to be drawn therefrom.

██ ██ We think that it was a question of fact for the determination of the jury whether or not the appellant was the man who fired the shot that killed the deceased; and after a careful examination of the testimony we think that it cannot be said that the evidence was insuf-

ficient to support the verdict of the jury. As stated by this Court in Dean v. State, 173 Miss. 254, 160 So. 584, "We know, of course, that juries sometimes make mistakes and sometimes deliver unjust verdicts; but we must largely depend upon them, for no better means for the ascertainment of truth upon controverted issues of fact in the general affairs of life have been found."

It is next argued that the State failed to prove a cogent or convincing motive for the killing, and that fact should be considered in determining the sufficiency of the evidence to sustain the conviction.

██ ██ But the rule is that, although proof of motive on the part of the defendant in a homicide case is proper, conviction of murder may be had without proof of motive. House v. State, 94 Miss. 107, 48 So. 3. ██ ██ The prosecution is required to prove the commission of the homicidal act, and to prove it beyond a reasonable doubt, but there is no obligation to prove a cause or reason that induced the accused to commit the act, if, without such proof, the evidence is sufficient to show that the act was done by him. If he committed the act, the question whether he had a motive or what it was, is not essential to be established. 26 Am. Jr. 478, Homicide, par. 465.

Proof of motive in this case, however, was not entirely lacking. Motive was shown by the testimony of Mose Faulkner and the appellant's own witnesses, Buster Martin and Jimmie Clark, relative to the rifling of the deceased's pockets after the shooting.

██ ██ It is next argued that the evidence failed to establish the corpus delicti as required to sustain a conviction in a homicide case. But there is no merit in this contention. In a homicide case, the corpus delicti consists of (1) the fact of death, and (2) the fact of the existence of criminal agency as the cause of death. Pitts v. State, 43 Miss. 472; Perkins v. State, 160 Miss. 720, 135 So. 357, 359; Brooks v. State, 178 Miss. 575, 173 So.

409; Watts v. State, 210 Miss. 236, 49 So. 2d 240. The fact of death in this case was proved by the undertaker, who picked up the body at the scene of the killing, and the technician who x-rayed the body, and by the testimony of Ora Mae Warren, Douglas Burton and Jimmie Clark, who saw the body of the deceased only a few minutes after he was killed. The fact of the existence of criminal agency as the cause of death was proved by the testimony of Mose Faulkner, Jimmie Clark, Buster Martin, and Oziah Stevenson, eyewitnesses to the shooting.

We find no reversible error in the record, and the judgment of the lower court is therefore affirmed.

Affirmed.

*Roberds, P. J.,* and *Hall, Lee* and *Holmes, JJ.,* concur.