261 So.2d 453 (1972)
Eugene CROMEANS
v.
STATE of Mississippi.
No. 46785.
Supreme Court of Mississippi.
April 17, 1972.
Rehearing Denied May 8, 1972.
*454 Jimmy D. Shelton, Billy W. Shelton, Tupelo, for appellant.
A.F. Summer, Atty. Gen., by James W. Haddock, Sp. Asst. Atty. Gen., Jackson, for appellee.
BRADY, Justice:
This is an appeal from the Circuit Court of Lee County, Mississippi, wherein the appellant, Eugene Cromeans, was tried and found guilty of murder and was sentenced to life imprisonment in the state penitentiary. From that verdict and judgment, the appellant appeals.
There is great conflict in the testimony of witnesses in this case and the following is but a short statement of what occurred on the night of March 13, 1970. On that date, sometime between 10:00 and 10:30 p.m., the appellant drove his automobile into the driveway and near the house of the deceased, Elbert Franks. In the automobile with the appellant were a Mr. Clippard and Nelson Franks, one of Mr. Elbert Franks' sons. It is apparent from the record that all three men had been drinking, though to what extent is in conflict. It is admitted, however, that both wine and beer had been consumed by these individuals prior to their arrival at the home of the deceased.
Upon stopping in the driveway, the appellant got out of his automobile and immediately entered the home of Elbert Franks. There is conflict as to whether the appellant merely opened the door and entered the house or whether he kicked and hammered at the door demanding to be let in. Nelson Franks, who was in the automobile with the appellant, got out of that car and entered a parked automobile belonging to one Billy Wayne Lyles. In the automobile with Billy Wayne Lyles was a Miss Magdaline Smith; on the back seat at the time was another son of the deceased, Richard Franks. Richard Franks was approximately twenty-six years old and Nelson Franks was twenty. During the time they were in the Lyles automobile, they heard loud voices coming from within the house. In the house at that time were Mrs. Elbert Franks, wife of the deceased, Mr. Elbert Franks, the deceased, who was on the bed, and Tommy Cromeans, the son of the appellant, who was spending the night there and was in bed in a back room of the house.
The record reveals that a violent argument arose between the appellant and Mrs. Franks. The appellant was in the house a very short period of time when numerous witnesses saw him leave the house and reenter his car. There is testimony that the appellant dared Mrs. Franks to follow him. She followed him out of the house and she in turn was followed by Tommy Cromeans. Mrs. Franks carried a stick or a toy gun barrel or a vacuum cleaner hose in her hand. Appellant asserts that she struck his car with the object. There is testimony that the appellant told her not to hit his car. She struck his car, and Mrs. Franks' testimony is corroborated that he thereupon struck her, knocking her to the ground and kicking her. She testified that he then said: "Die you bitch, die, bitch, like your husband is going to do." Appellant contends that he never struck her, that he merely attempted to grab the object away from her. The record discloses that Nelson Franks ran to the house calling his father and telling him that the appellant had beaten his mother. Richard Franks tried to assist his mother in getting up off of the ground, and when doing so she cried out: "Kill them, kill them, he hit me."
After this violent confrontation between the appellant and Mrs. Franks, the appellant got in his car and backed it down to the blacktop road, some one hundred and *455 twenty feet from the Franks' home. His son Tommy was already seated on the back seat of the automobile, and Mr. Clippard was seated on the front seat. The testimony is very contradictory as to exactly what was stated and what occurred at that time. It is the contention of the appellant that Mr. Elbert Franks called to him: "Wait a minute" or "Hold it." On the other hand, witnesses for the state testified that the appellant stopped the car and yelled to Mr. Franks to get "his little dried-up ____ out there." It is apparent from the record that Mr. Elbert Franks ran out of the house with a poker in one hand, and that he picked up a stick of firewood in his other hand, and ran toward the appellant's car. Nelson Franks admits that he picked up a crowbar and went toward the appellant's car. The record reveals that Mr. Franks struck the appellant's automobile one or more times. The state's witnesses, Richard Franks, Mrs. Elbert Franks, Nelson Franks and Billy Wayne Lyles, testified that the appellant got out of his automobile and either took the stick of wood away from Mr. Franks and struck him with it or picked it up off the ground and struck Mr. Franks. In addition, he struck Mr. Franks numerous times with his fist and then kicked him when he lay on the ground. The appellant testified that he got out of the car only because he was afraid the windshield was going to be broken into his face, and that when he threw the car door open it hit Mr. Franks, knocking him to the blacktop toward the front of the car. He asserted that Mr. Franks dropped the poker at that time. However, his son Tommy, who was seated in the back seat, testified that his father got out of the car and took the poker away from Mr. Franks and threw it or laid it on the side of the road.
Mr. Jimmy Clippard, who was in the car, testified that he had been asleep and did not wake up until someone struck the car; that he got out and walked toward the front of the car where he tripped over Mr. Franks, who was lying on the blacktop. Nelson Franks, who arrived at the scene at approximately the same time his father did, testified that he struck with the crowbar someone whom he believed to be Mr. Clippard. The appellant testified that he assisted Nelson Franks in picking up Elbert Franks from the blacktop. Appellant testified that he offered to take Mr. Franks to a doctor. However, the testimony of some of the state's witnesses was that the appellant told them to get the "S____-of-a b____" out of the way or he would run over him.
Mr. Franks was first carried into his house by his son Nelson with the assistance of Billy Wayne Lyles. Mr. Franks was then taken to the office of Dr. Thomas McDonald in Mantachie at about 10:30 p.m. Dr. McDonald testified that Mr. Franks was a small man, approximately five feet, six or seven inches, and weighed less than a hundred pounds. The doctor stated that Mr. Franks was not orientated and was unable to respond to questions. He testified, however, that he was moving all extremities, and the injuries were confined to the head. There were approximately five injuries: One about each ear, one over each eye and one in the area behind the right ear. The doctor's testimony was that the injury to the left ear was more severe than the one to the right ear and that the left ear was swollen and blue. It was the doctor's opinion that the most severe of all the injuries and the only one that was bleeding was the one in the area behind the right ear. This injury seemed to be more a hole in the head, and the doctor proceeded to explore with his finger to make sure that there was no depressed skull fracture. It was the opinion of the doctor that the other injuries were made by some blunt instrument but that the injury back of the right ear seemed to have been made by some sharp instrument. The doctor treated the different injuries and shaved the scalp in the area behind the right ear but did not do any sutural work. He merely placed *456 a bandage over the injury. He then had the family take Mr. Franks to the hospital in Tupelo where he had called and made arrangements to have him placed in the hospital for observation overnight. Mr. Franks died the next morning before the doctor arrived at the hospital.
Dr. L.C. Costley testified that he performed the autopsy on Mr. Elbert Franks in the morgue at the North Mississippi Medical Center in Tupelo on March 14. Dr. Costley stated that the body was characterized by having a number of marks about the face and head, contusions, bruises and scratches, abrasions of the forehead and, in laymen terms, there were black eyes, shiners, and contusions about the eyes. Dr. Costley testified that the injury to the head included a fracture line through the skull, through the entire thickness of the skull, and that in addition to this fracture of the skull on the right side there was an extensive accumulation of blood on the left side of the brain, and that, based upon his examination, it was his opinion that the cause of death was the extensive brain hemorrhage. He further testified that when he endeavored to remove the brain "... the damage was so extensive that I could not manually lift it out in the usual way without tearing of  without collapse actually of the left side of the brain."
The appellant was indicted and tried for the murder of Elbert Franks and the jury returned a verdict and sentence confining the appellant to life imprisonment in the Mississippi State Penitentiary. The appellant prosecutes this appeal and assigns as error the following:
1. The Court erred in overruling the Defendant's motion to reduce the charge against the Defendant from that of murder to that of manslaughter.
2. The Court erred in granting State's instructions Number 1, 2, 5, and 6 as each of these instructions, in whole or in part, present to the jury the question of murder, and that, at most the Appellant could not be convicted of anything more than manslaughter.
3. The Court erred in overruling the Defendant's Motion for a directed verdict at the close of the State's case and again after the Defendant had rested and the State closed after rebuttal testimony.
4. The Verdict of the jury evidenced bias, passion and prejudice on the part of the Jury.
5. The Verdict of the Jury was against the overwhelming weight of the evidence.
6. The Court erred in not sustaining the Defendant's motion for a new Trial on the grounds stated therein and especially on grounds No. 9 wherein it has been determined that one of the bailiffs that took the Jury to lunch one day was a cousin of the deceased and aided in the selection of the jury.
In support of his first error assigned, the appellant urges that at the very most the appellant is guilty only of manslaughter. The appellant contends that since Mr. Franks attacked the automobile of the appellant with a stick of wood and a fire poker and began hitting the appellant's automobile he was clearly violating Mississippi Code 1942 Annotated section 2281 (1956) and that he was therefore committing an unlawful act. The appellant further contends that under Mississippi Code 1942 Annotated section 2225 (1956), the appellant was justified in hitting and killing Mr. Franks. The appellant urges that he can be charged only with manslaughter and not murder. The appellant submits that he had had no trouble with Mr. Franks and had actually started to leave when someone hollered to "hold it" or "wait a *457 minute," and that Mr. Franks initiated the conflict by hitting the car of the appellant. The appellant urges that the deceased was the aggressor and that it was only in the "heat of passion" that the appellant hit the deceased several times. The state has failed to show premeditation or other elements of murder and under Mississippi Code 1942 Annotated section 2226 (1956) the most the appellant should have been charged with and the only issue for the jury was whether the appellant was guilty of manslaughter. The testimony that would establish premeditation and malice aforethought is disputed. The question of murder or manslaughter is a question of fact to be resolved by the jury. Barnett v. State, 232 Miss. 208, 98 So.2d 656 (1958); Rogers v. State, 222 Miss. 609, 76 So.2d 702 (1955); West v. State, 218 Miss. 397, 67 So.2d 366 (1953); Butler v. State, 177 Miss. 91, 170 So. 148 (1936); and Busby v. State, 177 Miss. 68, 170 So. 140 (1936).
There is testimony indicating that the appellant made threats against the deceased, Elbert Franks, and that the appellant beat Mr. Franks' wife. The evidence is sufficient to substantiate the jury's conclusion that the aggressor at all stages of the conflict, was not Mr. Elbert Franks but was, in fact, the appellant. Under the disputed and contradictory testimony the question of whether the verdict should be murder or manslaughter must rest with the jury and no error was committed by the trial court in overruling appelllant's motion to reduce the charge.
As to appellant's second error assigned, the court did not err in overruling the motion to reduce the charge. Therefore, the instructions presenting the question of murder to the jury were proper.
As to appellant's third error assigned, based upon the disputed testimony the trial court properly overruled the motion for a directed verdict and allowed the facts to be considered by the jury.
We will consider appellant's fourth and fifth errors assigned together. Appellant contends that a statement made by the district attorney during his closing argument biased the jury against the appellant. We find no merit in this contention. The appellant made no objection at the time the statement was made and it was not of such an inflammatory nature as to require the intervention of the trial judge. Peterson v. State, 242 So.2d 420 (Miss. 1970).
We have held in numerous cases that the jury is the sole judge of the credibility of the witnesses and the weight to be attached to their testimony. We have further said that we will not set aside a guilty verdict unless it is clearly a result of prejudice, bias, or fraud, or is manifestly against the weight of credible evidence. Marr v. State, 248 Miss. 281, 159 So.2d 167 (Miss. 1963); Freeman v. State, 228 Miss. 687, 89 So.2d 716 (1956).
Appellant's last assignment of error is totally unsupported by evidence in the record and, therefore, is without merit.
In conclusion, we find that the issues were submitted to the jury upon proper instructions. The jury resolved all disputed issues of fact in favor of the appellee and we find no reversible error committed in the trial. Therefore, the judgment of the trial court is affirmed.
Affirmed.
GILLESPIE, C.J., and PATTERSON, SMITH and SUGG, JJ., concur.