536 So.2d 1341 (1988)
Noah WHEELER
v.
STATE of Mississippi.
No. DP-80.
Supreme Court of Mississippi.
December 14, 1988.
*1342 Kennie E. Middleton, Fayette, for appellant.
Mike Moore, Atty. Gen. by Marvin L. White, Jr., Asst. Atty. Gen., and Donald G. Barlow and Felicia C. Adams, Sp. Asst. Attys. Gen., Jackson, Glenn L. White, Dist. Atty., Hattiesburg, for appellee.
En Banc.
ANDERSON, Justice, for the Court:
Noah Wheeler was indicted by the Grand Jury of Forrest County for capital murder in the death of Jackie Dole Sherrill, a Hattiesburg police officer. A change of venue having been granted, he was tried in the Circuit Court of Rankin County and found guilty. After the sentencing phase of the bifurcated trial, the jury imposed the sentence of death.
On the afternoon of December 31, 1984, Hattiesburg police received a report of child neglect at a certain address in Hattiesburg. Detective Jackie Dole Sherrill proceeded to that address with a warrant for the arrest of Noah Wheeler. A social worker drove with her in the same car. Three other police officers, in separate cars, also went there. Officer Sherrill went around to the back of the house. Officers Tony Davis and Steve Reid, who were dressed in police uniforms and Officer John Barnes, who was dressed in civilian clothes, went to the front door. The officers spoke to Noah Wheeler through the screen door and told him they had a warrant for his arrest. Wheeler responded with hostility. The officers attempted to enter the house and a struggle began between them and Wheeler. During the struggle one of the officer's guns somehow came out of its holster and Wheeler began to fight the officers for it. Two random shots were fired, whereupon Officer Sherrill came around to the front porch to see if everything was all right. At this juncture, a third shot was fired which hit Officer Sherrill in the chest, inflicting a wound which apparently caused death within seconds. Wheeler was finally subdued and taken to a hospital for treatment of injuries he suffered while resisting arrest.
After the sentencing phase of the trial, the jury made written findings that Noah Wheeler (1) actually killed Officer Sherrill, (2) attempted to kill Officer Sherrill, and (3) contemplated that lethal force would be employed. They also made written findings of the following aggravating circumstances beyond a reasonable doubt: (1) Wheeler knowingly created a great risk of death to many persons, (2) the capital offense was committed for purpose of avoiding or preventing a lawful arrest or effecting escape from custody; (3) the capital offense was committed to disrupt or hinder the lawful exercise of a governmental function of the enforcement of law. They further found that these aggravating factors outweighed any mitigating circumstances (which were not enumerated), and unanimously *1343 found that Wheeler should suffer death. The trial judge entered the sentence accordingly.
On appeal, Wheeler has adduced numerous assignments of error. Because we find one of them dispositive, we need not address them all. This appeal turns on whether the death sentence is supported by the evidence in the record. We hold that it is not, and thus we reverse as to that sentence.
Mississippi Code Annotated, section 99-17-20 (Supp. 1978), states in part:
No person shall be tried for capital murder, or any other crime punishable by death as provided by law, unless such offense was specifically cited in the indictment returned against the accused by setting forth the section and subsection number of the code defining the offense... . (Emphasis added).
In the present case, the indictment states that Noah Wheeler "did unlawfully, wilfully and feloniously, with malice aforethought, kill and murder a human being, to-wit: Jackie Sherrill, and said Jackie Sherrill being then and there a police officer of the Hattiesburg Police Department, Hattiesburg, Mississippi, while the said Jackie Sherrill was acting in her official capacity as a police officer with the Hattiesburg Police Department, City of Hattiesburg, Mississippi, the said Noah Wheeler well knowing that the said Jackie Sherrill was a police officer in violation of Section 97-3-19(2)(a) of the Mississippi Code of 1972, as amended, against the peace and dignity of the State of Mississippi." (Emphasis added)
The section and subsection cited in the indictment, state in pertinent part:
(2) The killing of a human being without the authority of law by any means or in any manner shall be capital murder in the following cases:
(a) Murder which is perpetrated by killing a peace officer or fireman while such officer or fireman is acting in his official capacity or by reason of an act performed in his official capacity, and with knowledge that the victim was a peace officer or fireman.
There is no dispute about Jackie Sherrill's objective status. She was clearly a police officer who was killed in the line of duty. Nor is there any reasonable doubt that Noah Wheeler fired the fatal shot. The applicability of our capital murder statute to this tragedy must be determined by the requirement that the accused acted "with knowledge that the victim was a peace officer... ." As a practical matter, this question depends upon whether or not Noah Wheeler saw Jackie Sherrill at the time he fired the fatal shot or, at anytime before, or had a sufficient sight of her to realize that she was a police officer.
At no time did Noah Wheeler admit that he had seen Jackie Sherrill before the shooting. At trial, he consistently denied it. The evidence to the contrary is, to say the least, less than overwhelming. It is clear from the record that he could not have seen Officer Sherrill until immediately before the shooting, since upon her arrival at the house she had gone immediately to the rear and did not emerge until she heard the noise of the struggle outside. Officer Reid testified only that he saw the pistol pointed at Officer Sherrill immediately before the shot was fired. He did not see in which direction Wheeler was looking at the time. Officer Barnes gave no testimony as to the direction in which the gun was pointing at the fatal instant. He testified only that he saw the pistol pointed in the direction of Officer Sherrill immediately before the shot was fired. Officer Tony Davis said that before the fatal shot was fired, Wheeler's head was turned to the right, "looking right at her." However, on cross examination he wavered, admitting he did not know with certainty that Wheeler had seen her. Such was the only direct testimony on the crucial issue. The state argues that in addition to this, the jury had before it the evidence of certain impromptu statements allegedly made by Wheeler at the hospital. However, two of these statements cannot resolve the issue. Wheeler was said to have stated he had "popped her twice" and wondered whether she was still alive. He is also alleged to have asked a deputy, "Cowboy, I shot that white girl. Is *1344 she dead yet?" However, it is undisputed that by the time Wheeler was taken from the scene of the tragedy, he was aware that Officer Sherrill had been shot. Therefore, these statements, even accepted as true, do not indicate any guilty knowledge of Officer Sherrill's status before the shot was fired. The only statement falling into that category was his alleged statement to the deputy that God had told Wheeler that it was the white girl's time to die and he "took her out." Even so, it must be remembered that Officer Sherrill was in civilian clothes during the incident. If the conviction for capital murder is to survive, there must be such evidence as to warrant the jury in believing beyond a reasonable doubt that Wheeler saw Officer Sherrill and realized that she was a police officer and not just a "white girl." There simply is no such evidence in this record. The closest approach to it is the testimony that Officer Sherrill was wearing her badge and a holstered pistol. There was no unequivocal testimony that Wheeler saw either item in the mere seconds when she was visible to him. As to the pistol, even if he had seen it, it would not have supplied the necessary scienter; it is commonly known that in our society police are not the only people who carry firearms. As for the badge, there is certainly at least a reasonable doubt that Wheeler (who, be it remembered, was rolling around on the ground in a fight with three other men) saw and recognized so small an object.
In short, we are persuaded that this is one of those rare instances in which a jury verdict must be set aside for want of sufficient evidence to support it.
We do not, however, find it necessary to reverse this case in toto. The evidence was not enough to convict Wheeler of capital murder, but it was more than sufficient to support a conviction for simple murder. Subsection (1) of the statute under which Wheeler was indicted states, in part:
(1) The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases:
.....
(b) When done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual.
By its form, the statute thus implicitly recognizes the established doctrine that simple murder is a lesser included offense of capital murder. E.g., Bell v. Watkins 692 F.2d 999, 1003 (5th Cir.1982), cert. den. sub nom Bell v. Thigpen, 464 U.S. 843, 104 S.Ct. 142, 78 L.Ed.2d 134 (1983); Pruett v. State, 431 So.2d 1101, 1105-06 (Miss. 1983), vacated on other grounds sub nom. Pruett v. Thigpen, 665 F. Supp. 1254 (N.D.Miss. 1986).
By seizing the officer's gun and firing it (according to the most generous possible interpretation) recklessly and at random, Wheeler certainly engaged in the type of conduct contemplated by § 97-3-19(1)(b). In fact, the jury practically found as much during the sentencing phase, listing among the aggravating circumstances the fact that Wheeler "knowingly created a great risk of death to many persons."
This Court has the authority to affirm a conviction for a lesser included offense while simultaneously reversing as to the greater offense, if the evidence warrants. E.g., Craig v. State, 520 So.2d 487, 493 (Miss. 1988); Drane v. State, 493 So.2d 294, 300 (Miss. 1986); Morgan v. State, 388 So.2d 495, 498 (Miss. 1980). While none of these cases involved capital murder prosecutions, the policy supporting them seems to apply with even greater force where life is at stake.
The conviction and sentence for capital murder are therefore reversed. Wheeler's conviction is affirmed as to the lesser offense of simple murder. The case is remanded for resentencing in accord with this opinion.
REVERSED AS TO CAPITAL MURDER, AFFIRMED AS TO SIMPLE MURDER *1345 AND REMANDED FOR RESENTENCING.
HAWKINS, P.J., and PRATHER, ROBERTSON and ZUCCARO, JJ., concur.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and GRIFFIN, J., dissent.
SULLIVAN, J., not participating.
ROY NOBLE LEE, Chief Justice, dissenting:
At approximately 4:00 p.m. on New Year's Eve, 1984, Detective Jackie Dole Sherrill, accompanied by Cathrine Crowson, a social worker with the Forrest County Department of Public Welfare, went to investigate a report of children being neglected and to serve an arrest warrant at 400 Eastside Avenue in Hattiesburg, Mississippi. According to prior arrangements, they drove in Sherrill's unmarked police car to the corner of Eastside Avenue and Hall Avenue, where they met two other officers in marked police cars and another officer in an unmarked car. All the officers then proceeded to 400 Eastside Avenue. Officers Tony Davis and Steve Reid, both in full uniform, and Detective Sgt. John Barnes, dressed in plain clothes, went to the front of the house.
Detective Sherrill was dressed in dark slacks and a light blouse, with her badge and .357 Magnum revolver plainly visible on her belt. Sherrill pulled her car into the driveway, got out, and told Ms. Crowson to remain in the car until the officers had arrested the suspect. She further told Ms. Crowson she would bring the children to her so they could take them to the shelter. Detective Sherrill left the car, disappeared behind a brick wall, and eventually went to the back of the house.
Officer Reid, who was in physical possession of the warrant, knocked on the front door. The door was open, but the screen door was closed. Reid informed appellant that he had a warrant for appellant's arrest and asked if he would please step outside. Wheeler got mad and said that "he would die and go to hell" before he let them arrest him. Wheeler appeared to step back into the house.
Sgt. Barnes went up to the door and attempted to open the screen door, but it was locked. He pulled harder and the latch gave way. At this point, Wheeler turned and came at them like "somebody shot him out of a cannon." He hit Officer Reid about waist high, knocking him down and half way off the porch of the house. The other two officers were pushed back from the door. They immediately went to Reid's assistance. Davis grabbed appellant's feet and Barnes straddled his lower back. Detective Barnes secured appellant's left arm and asked Davis for his handcuffs. Davis complied. The handcuffs were placed on appellant's left wrist. In the melee, Wheeler managed to get possession of an officer's handgun. As Barnes began his attempt to secure appellant's right arm, two shots rang out. The first bullet grazed the right side of Reid's forehead. The second struck the floor of the porch between Reid's legs.
Sherrill came onto the porch at this time and asked, if everyone was all right. Barnes answered in the affirmative. At that point, appellant extended his right arm from under his body, aimed and shot Sherrill in the chest. Barnes grabbed the gun, placing his hand between the gun and the hammer, thereby preventing it from being fired again. Sherrill staggered to the side and fell off the porch into a flower bed. Appellant was attempting to aim and fire the gun again. Davis also grabbed the gun. Barnes finally wrestled the gun from Wheeler and secured his hand in the handcuff. As Barnes went over to Sherrill to check her condition, he radioed for an ambulance and further backup. The first officer to arrive was Captain Charles Sherrill, the victim's husband. Detective Sherrill was rushed to the hospital, where she could not be revived.
The majority reverses the judgment of capital murder and sentence of death on the basis that the evidence is insufficient to show that appellant knew Sherrill was a police officer. I think that the correct rule *1346 of law has not been applied and that the majority's reasoning is misplaced.
The principle is elementary that proof and evidence introduced at trial, together with all reasonable inferences that flow therefrom, must be accepted in a light most favorable to the State upon appeal by the defendant. In Callahan v. State, 419 So.2d 165 (Miss. 1982), this Court said:
[A]n elemental principle is that this Court in reviewing whether or not the jury had sufficient evidence to make its finding of fact is required to examine the facts most favorable to the party against whom a motion for directed verdict or peremptory instruction is requested, in this case the State.
419 So.2d at 174. See also Williams v. State, 463 So.2d 1064 (Miss. 1985); Christian v. State, 456 So.2d 729 (Miss. 1984); Hyde v. State, 413 So.2d 1042 (Miss. 1982); Sparks v. State, 412 So.2d 754 (Miss. 1982); Robinson v. State, 409 So.2d 719 (Miss. 1982); Sadler v. State, 407 So.2d 95 (Miss. 1981); Carroll v. State, 396 So.2d 1033 (Miss. 1981).
In Maiben v. State, 405 So.2d 87 (Miss. 1981), the Court said:
We have held in numerous cases that the jury is the sole judge of the credibility of the witnesses and the weight to be attached to their testimony. We have further said that we will not set aside a guilty verdict, absent other error, unless it is clearly a result of prejudice, bias or fraud, or is manifestly against the weight of credible evidence. Cromeans v. State, 261 So.2d 453 (Miss. 1972); Marr v. State, 248 Miss. 281, 159 So.2d 167 (1963); and Freeman v. State [228 Miss. 687, 89 So.2d 716 (1956)] supra.

405 So.2d at 88.
In Spikes v. State, 302 So.2d 250 (Miss. 1974), this Court held:
On appeal, in this situation in passing upon the sufficiency of evidence to support the verdict, this Court must accept as true the evidence which supports the verdict. Murphree v. State, 228 So.2d 599 (Miss. 1969).
302 So.2d at 251.
In Hankins v. State, 288 So.2d 866 (Miss. 1974), the Court said:
In Evans v. State, 159 Miss. 561, 132 So. 563 (1931), we stated:
We invite the attention of the bar to the fact that we do not reverse criminal cases where there is a straight issue of fact, or a conflict in the facts; juries are impaneled for the very purpose of passing upon such questions of disputed fact, and we do not intend to invade the province and prerogative of the jury.
(159 Miss. at 566, 132 So. at 564).
We conclude there was ample evidence to support the verdict of the jury and we decline to intrude into the factfinding office of the jury.
288 So.2d at 868.
As to knowledge that Officer Sherrill was a police officer, succinctly, the record shows the following:
(1) Four police officers went to appellant's house for the purpose of executing an arrest warrant, i.e., two officers in uniform, and two officers in plain clothes, Detective Sergeant John Barnes and Detective Jackie Dole Sherrill (victim).
(2) Three of the officers went to the front door and Officer Reid knocked on the door and attempted to serve the warrant. Detective Sherrill went to the rear door.
(3) Appellant when arrested, charged the three officers at the front of the house and engaged them in a scuffle. Detective Barnes, the plain clothes officer, secured appellant's left arm, placed handcuffs around his left wrist and was attempting to secure appellant's right arm.
(4) Appellant had obtained the sidearm of one of the officers, and shot at Reid, the bullet grazing his forehead. He fired a second shot, which hit the floor between Reid's legs.
(5) Detective Sherrill had come to the front and inquired if everything was under control.
(6) Appellant knew he was being arrested by police officers; that no other persons were there, except police officers. (This is a reasonable inference from the evidence.)
*1347 (7) Appellant wanted to kill all the officers; he saw Detective Sherrill as she stood a few feet from him on the porch; she had plainly visible her badge and a .357 Magnum revolver, one of the largest handguns used by police officers; he freed his right arm, held it out and intentionally shot and killed Detective Sherrill.
The facts presented a question for the jury as to whether or not appellant knew Detective Sherrill was a police officer. The instructions presented that issue to the jury. On this substantial evidence, the jury found beyond reasonable doubt that appellant knew Detective Sherrill was a police officer. That verdict, and the judgment of the court, should not be disturbed by this appellate court.
I would affirm the judgment of the lower court and sentence imposing the death penalty, and, therefore, I dissent from the majority opinion.
DAN LEE, P.J., and GRIFFIN, J., join this dissent.