# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-01489-COA

NICHOLAS PAUL FONTENOT A/K/A                          APPELLANT
NICHOLAS FONTENOT A/K/A NICHOLAS
PAUL FORTENOT

v.

STATE OF MISSISSIPPI                                    APPELLEE

DATE OF JUDGMENT:              10/01/2018
TRIAL JUDGE:                   HON. LISA P. DODSON
COURT FROM WHICH APPEALED:     HARRISON COUNTY CIRCUIT COURT,
                               FIRST JUDICIAL DISTRICT
ATTORNEYS FOR APPELLANT:       OFFICE OF STATE PUBLIC DEFENDER
                               BY: HUNTER NOLAN AIKENS
ATTORNEYS FOR APPELLEE:        OFFICE OF THE ATTORNEY GENERAL
                               BY: BILLY L. GORE
DISTRICT ATTORNEY:             JOEL SMITH
NATURE OF THE CASE:            CRIMINAL - FELONY
DISPOSITION:                   AFFIRMED - 12/03/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE J. WILSON, P.J., WESTBROOKS AND LAWRENCE, JJ.

### WESTBROOKS, J., FOR THE COURT:

¶1.     Nicholas P. Fontenot was convicted of one count of burglary of an automobile pursuant to Mississippi Code Annotated section 97-17-33(1) (Rev. 2014) and sentenced to serve seven years in the custody of the Mississippi Department of Corrections (MDOC). Fontenot filed a motion for judgment notwithstanding the verdict (JNOV) or, alternatively, a new trial, which the circuit court denied. Fontenot now appeals, arguing that the circuit court erred in denying his motion for a JNOV or a new trial. Finding no error, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2. On June 27, 2017, James Smith parked his pickup truck in the parking lot of a Subway restaurant in Gulfport, Mississippi. Both doors were left unlocked, and the vehicle's windows were down. Smith went into the Subway where his then fiancee, Tina Lewis,[1] was working as a sandwich artist. Approximately thirty minutes into his visit, Smith looked outside and observed a man, later identified as Nicholas Fontenot, in the passenger side of Smith's truck. Neither Smith nor Lewis witnessed how Fontenot got into the vehicle. Smith testified that he walked outside, confronted Fontenot, and asked, "What are you doing in my truck?" Smith testified that the glove box, which had been closed, was open and that various items were strewn about the inside of the truck. Fontenot acted confused and responded, "This is my friend's truck." When Lewis later came out and asked Fontenot why he was in the truck, his response was the same.

¶3. The details are unclear, but it was reported that Smith forcibly pulled Fontenot out of the truck and may have shoved him. The police were called, and at some point during the exchange with Smith, Fontenot ran away. Smith ran after Fontenot but was unable to catch him.

¶4. Officer Luis Garcia of the Gulfport Police Department was the first responder to arrive and later testified that the suspect was described as a white male with a stitched cut on the back of his head. Officer Garcia also testified that an unidentified witness observed and reported the tag number of a brownish-gold F-150 pickup truck that Fontenot was seen riding

---

[1] At the time of the incident, Tina Lewis's name was Tina Sears.

away in.

¶5.     Officer Brad Sumrall arrived next and pursued the truck based on the description and tag number provided to Officer Garcia. After locating the vehicle about a half a mile away, Officer Sumrall initiated a traffic stop. The driver, Willie Jackson, testified that Fontenot flagged him down and approached his vehicle less than a block away from the Subway. Jackson testified that Fontenot had claimed to have run out of gas and Jackson had agreed to give him a ride. Jackson indicated that after getting into his truck, Fontenot "looked back several times," and it made Jackson curious.  Noting that Fontenot matched the description of the suspect, Officer Sumrall took him into custody and returned to the Subway. Back at the sandwich shop, Smith and Lewis identified Fontenot as the man with the distinctive scar on the back of his head that they had observed in Smith's truck.

¶6.     Smith reported that none of his belongings were missing, but Lewis testified that she had left her grandmother's blue-stoned ring in the glove box and that the ring was missing after the incident with Fontenot. The ring was never recovered.

¶7.     On December 4, 2017, Fontenot was indicted for automobile burglary in violation of Mississippi Code Annotated section 97-17-33(1).  On September 25, 2018, a trial ensued on the matter in the Harrison County Circuit Court. At the conclusion of the prosecution's case in chief, Fontenot moved for a directed verdict, asserting that the evidence presented was insufficient to prove that Fontenot "stole out of the truck." The circuit court denied the motion, and the trial proceeded. Fontenot renewed his motion for a directed verdict after resting his case; again, the court denied the motion. At the conclusion of the trial, the jury

3

received instructions on the crime of burglary and the lesser-included offense of trespassing. Fontenot was found guilty of burglary and on October 1, 2018, was sentenced to serve seven years in MDOC's custody. On October 2, 2018, Fontenot filed a motion for a JNOV or, alternatively, a new trial. The circuit court entered an order denying the motion on October 15, 2018. On appeal, Fontenot maintains that the evidence presented by the State was "insufficient to support the verdict," which was "against the overwhelming weight of the evidence."

## STANDARD OF REVIEW

¶8. This Court reviews the grant or denial of a motion for JNOV de novo. *Shepherd v. State*, 270 So. 3d 962, 966 (¶8) (Miss. Ct. App. 2018) (citing *Estate of Gardner v. Gardner*, 228 So. 3d 921 (¶19) (Miss. Ct. App. 2017)). "A motion for a JNOV challenges the legal sufficiency of the evidence, and where there is substantial evidence to support the verdict, we will affirm the denial of a JNOV." *Id.* (citing *InTown Lessee Assocs. LLC v. Howard*, 67 So. 3d 711, 718 (¶22) (Miss. 2011)).

¶9. Substantial evidence has been defined as "information of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions." *Daniels v. State*, 107 So. 3d 961, 963 (¶10) (Miss. 2013). "When reviewing a motion for a JNOV, the trial judge is required to accept as true all of the evidence that is favorable to the State, including all reasonable inferences that may be drawn therefrom, and to disregard evidence favorable to the defendant." *Bryant v. State*, 151 So. 3d 1025, 1029 (¶14) (Miss. Ct. App. 2014) (internal quotation mark omitted). "We will reverse

only where with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair minded jurors could only find the accused not guilty." *Id.* (internal quotation marks omitted).

¶10. With regard to a denial of a motion for new trial, the Mississippi Supreme Court in *Lindsey v. State*, 212 So. 3d 44, 45 (¶4) (Miss. 2017), held:

> When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. The evidence must be weighed in the light most favorable to the jury's verdict. If the verdict is against the overwhelming weight of the evidence, the proper remedy is to grant a new trial, but this remedy should be used only in exceptional cases where the evidence preponderates heavily against the verdict.

(Citations and internal quotation marks omitted). "This Court will reverse only if the Court determines that the trial court abused its discretion in denying a motion for a new trial." *Butler v. State*, 102 So. 3d 260, 268 (¶23) (Miss. 2012).

## DISCUSSION

### I. Was the evidence insufficient to support the verdict?

¶11. Fontenot argues that the evidence presented was insufficient to support his conviction and that this court should reverse and render judgment of acquittal. A JNOV motion challenges the "legal sufficiency of the evidence supporting the guilty verdict." *Parker v. State*, 30 So. 3d 1222, 1235 (¶48) (Miss. 2010) (quoting *Croft v. State*, 992 So. 2d 1151, 1157 (¶24) (Miss. 2008)).

¶12. Fontenot was convicted under Mississippi Code Annotated section 97-17-33(1), which provides:

5

Every person who shall be convicted of breaking and entering, in the day or night, any . . . automobile, truck or trailer in which any goods, merchandise, equipment or valuable thing shall be kept for use, sale, deposit, or transportation, with intent to steal therein, or to commit any felony . . . shall be guilty of burglary, and imprisoned in the penitentiary not more than seven (7) years.

¶13. While Fontenot concedes that he entered Smith's truck absent permission, he argues that the evidence at trial was insufficient to prove the two essential elements of burglary beyond a reasonable doubt—that Fontenot committed a "breaking" or that he entered Smith's truck with the requisite "intent to steal or commit a felony." *Freeman v. State*, 220 So. 3d 1024, 1027 (¶10) (Miss. Ct. App. 2017) (citing *White v. State*, 195 So. 3d 765, 768-69 (¶11) (Miss. 2016)). We disagree.

### *A. Breaking*

¶14. Fontenot maintains that since Smith left his truck unlocked with the windows down, Fontenot could have entered the vehicle's cabin through the windows. He maintains that in this type of "open-window" scenario, no "breaking" of anything is required for entry, and, therefore, only a trespass could have occurred.

¶15. The Mississippi Supreme Court has defined "[a]ctual breaking" as "any act of force, however slight, 'employed to effect an entrance through any usual or unusual place of ingress, whether open, partly open, or closed.'" *Naylor v. State*, 248 So. 3d 793, 796 (¶10) (Miss. 2018) (internal quotation marks omitted) (quoting *Johnson v. State*, 235 So. 3d 1404, 1410 (¶14) (Miss. 2017)).

¶16. In *Naylor*, the appellant was convicted of automobile burglary and argued that "it was just as likely" that the door of the vehicle was already open when Naylor approached,

rendering his intrusion a potential trespass and not a breaking for the purpose of establishing burglary. *Id.* at 769 (¶11). Despite Naylor's assertion, the Court held that based on the testimony and evidence presented, the jury, as the "sole judge of the credibility of witnesses and the weight and worth of their testimony," might have reached "different conclusions on every element of the offense, [including breaking]," and as such "the evidence [was] sufficient" to support the verdict. *Id.*

¶17. Like Naylor, Fontenot presents a similar, alternative theory of entry and could have cast reasonable doubt upon the "breaking" element of burglary. However, this Court does not review the absence or presence of reasonable doubt in a fact-finder's mind, and as long as "fair-minded jurors" might have found Fontenot guilty, we must affirm. *See id.* at (¶¶8, 11).

¶18. Jurors heard Smith's testimony, during which he said under oath that the windows were left down, and the doors were left unlocked but closed. Smith also testified that he witnessed Fontenot in the truck without permission. Photographs of Smith's truck and the open windows were published to the jury. "[A]ll the proof need not be direct and the jury may draw any reasonable inferences from all the evidence in the case." *Campbell v. State*, 278 So. 2d 420 (Miss. 1973) (citing *Woodward v. State*, 180 Miss. 571, 178 So. 469, 471 (1938)). There was no testimony that Fontenot got into the truck through the windows or that he opened the truck door to gain entry. Instead, the jury was free to infer from the evidence, or lack thereof, how Fontenot came to be inside of the vehicle. Accordingly, we find the evidence was sufficient to support the jury's finding that the State proved the "breaking" element of burglary.

7

### B.    Intent

¶19.   Next, Fontenot argues that evidence was insufficient to prove he possessed the intent to steal or commit a felony. As support, Fontenot cites Smith's testimony describing him as "surprised and caught off-guard" when confronted about his unauthorized presence in the truck. Smith indicated that when asked what he was doing in the truck, Fontenot responded, "[T]his is my friend's truck." Also, Fontenot notes that he was not found in possession of any stolen items.

¶20.   Again, Fontenot correctly asserts that this testimony *could have* established reasonable doubt in the mind of the jurors. The jury *could have* found that Fontenot was not there to steal anything from Smith's truck but instead entered the vehicle under the mistaken belief that it belonged to a friend. In addition to the testimony cited by Fontenot, the jury heard Smith's description of the truck's interior before and after Fontenot's intrusion.

| | |
|---|---|
| State [to Smith]: | What did you notice about the truck? |
| Smith: | My glove box was open, everything was just in shambles in my truck.  I had a skim board and a badge in my truck, and it was just all gone through. |
| State: | You say everything was in shambles.  What do you mean? |
| Smith: | Well, I had paperwork in the glove box.  It was just [thrown] on the floorboard.  I had stuff in my ashtray, little console thing, it was just thrown all over the floorboard. |
| State: | And you mentioned a bag? |
| Smith: | Yes, sir. I had a little bag that I would take to work with me. It had been gone through. |

| | |
|---|---|
| State: | And you mentioned the glove box. Was the glove box open or closed when you– |
| Smith: | The glove box is always closed, sir. |
| State: | When you went out there after you – this guy got out of your truck and ran off, was the glove box open or closed? |
| Smith: | It was open. |
| State: | And it had been gone through? |
| Smith: | Yes, sir. |

The jury also heard testimony about Lewis's missing ring that she believed was stolen from

the glove box:

| | |
|---|---|
| State: | So is it common for her [Sears] to leave the ring in the glove box? |
| Smith: | Yes, sir. |
| State: | And had you let anybody else take the ring out of your truck? |
| Smith: | No, sir. Ain't nobody else been in that truck. |

*****

| | |
|---|---|
| State: | Did you get a look in that truck? |
| Lewis: | I did. |
| State: | What did you notice? |
| Lewis: | I noticed . . . a bag of James's was messed with, and the glove box was down, and my grandmother's ring was missing. |

¶21. "[I]f the intent to burglarize is present, then the act is not a trespass. If there is intent,

9

then it is a burglary." *Hall v. State*, 760 So. 2d 817, 819 (¶12) (Miss. Ct. App. 2000). Intent does not require Fontenot be found with stolen goods—only that he intended to steal from the vehicle. *See id*. Likewise, the inability to recover the ring does not prove that Fontenot did not take it. Based on Smith's and Lewis's accounts of a rummaged truck interior and missing ring, the jury was free to infer Fontenot's intent or the lack thereof. Therefore, we find the evidence presented was sufficient to support the jury's finding that the intent element of burglary was satisfied.

¶22. This Court is "authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that a reasonable and fair minded juror *could only* find the accused not guilty." *Id*. at (¶7) (emphasis added) (quoting *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993)). "In the case sub judice, there clearly existed in the record substantial facts from which the jury could, and did, conclude that [Fontenot] was guilty of auto burglary." *Id*.

¶23. This Court has stated that trespass "is a lesser included offense to every burglary." *Harper v. State*, 478 So. 2d 1017, 1021 (Miss. 1985). Indeed, a juror might have reasonably deduced that Fontenot climbed into Smith's truck through an open window, under the mistaken belief that the vehicle belonged to his friend. Acknowledging these possibilities, the court granted Jury Instruction D-4A, allowing the jury to consider the lesser-included offense of trespass. Like the question of whether a breaking occurred in Fontenot's case, intent is a jury issue.

¶24. The jury deliberated over instructions for burglary and trespass contemporaneously.

10

Reviewing the evidence set forth at Fontenot's trial, a reasonable and fair-minded juror could have found Fontenot guilty of either offense—the jury chose the former. As such, Fontenot's arguments fail. Finding the evidence sufficient to support the jury's verdict, we affirm the circuit court's denial of Fontenot's post-trial motion for a JNOV.

### II. Was the verdict against the overwhelming weight of the evidence?

¶25. Fontenot's also asserts that the circuit court erred by denying his motion for a new trial because the jury's guilty verdict was against the overwhelming weight of the evidence.

¶26. This Court "accept[s] as true the evidence which supports the verdict and . . . will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." *Whitlock v. State*, 47 So. 3d 668, 675 (¶20) (Miss. 2010) (quoting *Smith v. State*, 802 So. 2d 82, 86 (¶11) (Miss. 2001)). "It is a fundamental principle of law that a jury verdict will not be disturbed except in the most extreme of situations. 'Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal.'" *Id*. (quoting *Coleman v. State*, 926 So. 2d 205, 208-09 (¶14) (Miss. 2006)).

¶27. Here, Fontenot cites the fact that the stolen ring was not recovered and that Lewis had another ring resembling it as a basis for granting a new trial. Lewis testified that she owned two similar rings—one was her grandmother's ring (that was missing after the burglary), and the other was a similar ring she received from Smith.

¶28. Fontenot also points to the absence of any photographs reflecting the inside of Smith's truck, video footage, or fingerprints in the State's evidence. These are all valid points that

were raised by defense counsel before the jury but do not nullify the evidence that was presented.

¶29.    It has long been established that "the jury is the sole judge of the credibility of the witnesses and the weight to be attached to their testimony. We have further said that we will not set aside a guilty verdict, absent other error, unless it is clearly a result of prejudice, bias or fraud, or is manifestly against the weight of credible evidence." *Maiben v. State*, 405 So. 2d 87, 88 (Miss. 1981) (citing *Cromeans v. State*, 261 So. 2d 453, 457 (Miss. 1972); *Marr v. State*, 248 Miss. 281, 289, 159 So. 2d 167, 169-70 (1963)).

¶30.    As discussed in the current and above analysis on the sufficiency of the evidence, the jury was provided with more than enough testimony and photographical evidence to reach the verdict, and it was not against the overwhelming weight of the evidence presented. The record before the Court contains substantial, believable evidence that Fontenot committed the crime of burglary.

¶31.    During his closing arguments, Fontenot's trial counsel explained to the jurors that it was their job to determine if the vehicle had been rummaged through and charged them as the "finders of fact" to make that determination, despite the lack of picture or video evidence. The fact is that eyewitness testimonies of Smith and Lewis placed Fontenot at the scene and provided jurors with a detailed description of the tousled truck cab and its missing content. Based on that testimonial evidence, the jury was permitted to follow the instructions of Fontenot's counsel and reach a guilty verdict. In sum, the evidence presented by the State was sufficient to support the jury's verdict and the jury's verdict was not against the

overwhelming weight of the evidence. Accordingly, we must affirm the circuit court's judgment.

¶32. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**