# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2011-CT-00162-SCT

*JIMMIE ROACH a/k/a JIMMIE C. ROACH*
*a/k/a JIMMY ROACH*

*v.*

*STATE OF MISSISSIPPI*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 12/16/2010 |
| TRIAL JUDGE: | HON. S. MALCOLM O. HARRISON |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JANE E. TUCKER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LAURA HOGAN TEDDER |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 06/20/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     Jimmie Roach filed a motion for post-conviction relief claiming he was entitled to a new trial based on newly discovered evidence that during his trial a juror was exposed to extraneous information supplied by law enforcement personnel involved in the case.  The motion was denied.  Roach appealed, and the Court of Appeals affirmed.  Roach filed a petition for writ of certiorari, which the Court granted.

**Facts and Procedural History**

¶2. In 2004, Jimmie Roach was convicted by a jury in the Hinds County Circuit Court, First Judicial District, of possession of cocaine and possession of hydromorphone. Roach was subject to enhanced sentencing under Mississippi Code Sections 41-29-147 and 99-19-81 as a subsequent drug offender and habitual offender, respectively. *See* Miss. Code Ann. §§ 41-29-147 (Rev. 2009); 99-19-81 (Rev. 2007). He was sentenced to forty-eight years on the cocaine-possession charge and sixty years on the hydromorphone-possession charge, the sentences to be served consecutively in the custody of the Mississippi Department of Corrections. Roach appealed, and the Court of Appeals reversed and remanded for a new trial on a search warrant issue. *Roach v. State*, 7 So. 3d 932, 933 (¶ 1) (Miss. Ct. App. 2007). The State filed a petition for writ of certiorari, which was granted; the Court reinstated and affirmed the trial court's judgment of conviction and sentence. *Roach v. State*, 7 So. 3d 911, 928 (¶ 42) (Miss. 2009).

¶3. In May 2010, Roach filed an application for permission to file a motion for post-conviction relief in the trial court. We granted Roach's application, and he filed, *pro se*, a motion for post-conviction relief on September 16, 2010. Roach asserted, *inter alia*, that he was entitled to a new trial based on newly discovered evidence. He claimed that a juror had been exposed to extraneous information supplied by law enforcement personnel during his trial. Roach submitted the affidavit of Juror Derrick Tate, in which Tate explained that during Roach's trial he had approached two police officers, who were the State's witnesses, and asked them how much time Roach would get if he was found guilty. According to Tate's affidavit, the officers replied that Roach would get five to eight years. The affidavit provided, "As a result of being so advised[,] I voted guilty[.]"

2

¶4. A hearing on Roach's motion for post-conviction relief took place on December 15, 2010. Roach's brother, Preston Roach, testified at the hearing that, after the trial and sentencing, he was standing outside the courthouse with family members discussing Roach's sentence when Tate approached. Tate joined the conversation and made a statement that he had heard the sentence would not be more than five to eight years. Preston testified that he mentioned Tate's statement to Roach's appellate attorney some time between 2004 and 2006, while Roach's appeal was ongoing. Tate's affidavit was procured March 31, 2010.

¶5. Tate provided testimony at the hearing inconsistent with his affidavit. Tate testified that he did not approach the officers initially, rather, the officers were talking among themselves and he overheard them say if Roach was convicted he would get five to eight years. At that point, Tate turned to them and asked, "Five to eight years?" The officers responded, "Yes." Tate testified that he did not tell any other jurors about the alleged conversation, but that it was possible that other jurors overheard it because he was not the only one in the hall.

¶6. Tate's affidavit identified Officers R. W. Spooner and Shannon Bullock as the two officers he spoke with in the hall. During the hearing, Tate said he did not even recognize those names and that he did not supply the officers' names to the investigator who prepared the affidavit. The investigator determined from the trial court record which officers were called as witnesses at the trial, and he inserted those names in the affidavit when he typed it for Tate. Tate admitted that he did not read the affidavit before he signed it.

¶7. Spooner, a lieutenant with the Hinds County Sheriff's Department, testified as a witness for the State during Roach's trial. He also testified at the hearing on Roach's motion

3

for post-conviction relief. Spooner testified that he could not recall discussing Roach's possible sentence with another officer in the hallway during the trial. Further, Spooner stated that he would not have speculated that Roach's sentence would be between five and eight years because he was aware of the amount of narcotics found with Roach and he knew Roach had turned down a plea offer of twenty years.

¶8. At the hearing, Tate was asked multiple times by his attorney, the State's attorney, and the judge whether the information from the officers affected his verdict. Tate's response was different each time. His affidavit indicated that he had voted guilty based on being advised that Roach would get only five to eight years, and at the hearing, his testimony initially supported the veracity of his affidavit. At another point, he testified that the information "may have" influenced his decision. Later, he said that his decision was "mainly based" on the evidence, then later, that the information "had some influence" on his decision. Then he testified that he would have found Roach guilty even without hearing the speculation of a five-to-eight-year sentence, and that he "derived that [Roach] was guilty" based on the testimony and the evidence. He said several times that he "felt that [Roach] was guilty" but he felt that five to eight years was a "fair sentence."

¶9. At the close of the hearing, the circuit judge stated that Tate had responded to each questioner with what that person wanted to hear. The judge concluded that he could not consider Tate's testimony because it was inconsistent. The judge held that Roach had failed to present sufficient facts upon which relief could be granted, and he denied Roach's motion for post-conviction relief.

4

¶10. Roach appealed on the newly discovered evidence issue, and the Court of Appeals affirmed. **Roach v. State**, __ So. 3d __, 2012 WL 2305375 (Miss. Ct. App. June 19, 2012). The Court of Appeals noted the trial court's finding that Tate had given at least five different versions of what happened with the two officers and that Tate had tailored his story to "what the asking party wanted to hear." **Id.** at *2 (¶ 8). On that basis, the Court of Appeals found the issue to be without merit. **Id.** Judge Carlton dissented and discussed the issue of extraneous information received by a juror. The majority did not address Judge Carlton's dissent.

¶11. Judge Carlton explained that Tate's testimony was consistent in regard to hearing the extraneous information from law enforcement officers, and the "contradiction" in Tate's testimony pertained only to whether he approached the officers first or whether he overheard the officers discussing the sentence. **Id.** at *3 (¶¶ 12, 14) (Carlton, J., dissenting). Judge Carlton found that the record supported "a threshold showing of receipt of extraneous prejudicial information by a juror." **Id.** at *4 (¶ 15). Therefore, she would have remanded the case for further evidentiary hearing and to fully reconvene the jury "to determine if other jurors were exposed to the information regarding Roach's sentence and, if so, if it was reasonably possible that the information impacted the verdict." **Id.** at **4, 7 (¶¶ 15, 18).

¶12. The Court of Appeals denied Roach's motion for rehearing. Roach timely filed a petition for writ of certiorari, which the Court granted. Roach asserts that the Court of Appeals erred in affirming the trial court "for the reasons stated in the dissent by [Judge] Carlton." He asserts that the case should be remanded "for an evidentiary hearing to

5

determine whether it was reasonably possible that the extraneous communication testified to by Derrick Tate altered the verdict."

**Discussion**

¶13.    The only issue on appeal is whether Roach was entitled to post-conviction relief based on newly discovered evidence that a member of the jury was exposed to extraneous information.  To warrant relief on the ground of "newly discovered evidence," the petitioner must prove that the evidence "will probably produce a different result or induce a different verdict, if a new trial is granted." *Crawford v. State*, 867 So. 2d 196, 204 (¶ 9) (Miss. 2003) (internal citations omitted).  The instant matter does not present a true case of "newly discovered evidence," because the "evidence" at issue – that a juror heard an officer say Roach could get five to eight years if convicted – would not have been introduced as evidence at trial and does not go to the weight or sufficiency of the evidence against Roach. Based largely on Judge Carlton's dissent, Roach's claim has morphed into a claim that the trial court incorrectly handled the alleged extraneous communication with a juror, which is how we will address the issue.

¶14.    "Post-conviction proceedings are for the purpose of bringing to the trial court's attention facts not known at the time of judgment." *Williams v. State*, 669 So. 2d 44, 52 (Miss. 1996) (citing *Smith v. State*, 477 So. 2d 191 (Miss. 1985)).  The Post-Conviction Collateral Relief Act provides for limited review of "those matters which in practical reality, could not or should not have been raised at trial or on direct appeal." *Williams*, 669 So. 2d at 52 (citing *Turner v. State*, 590 So. 2d 871 (Miss. 1991)).  *See also* Miss. Code Ann. § 99-39-3(2) (Rev. 2007).

¶15.    The burden of proof "is on the petitioner to show 'by a preponderance of the evidence' that he is entitled to relief." ***Doss v. State***, 19 So. 3d 690, 694 (¶ 5) (Miss. 2009) (quoting Miss. Code Ann. § 99-39-23(7) (Rev. 2007)).  In reviewing a trial court's decision to deny a petition for post-conviction relief, we give "deference to the circuit judge as the 'sole authority for determining credibility of the witnesses.'" ***Doss***, 19 So. 3d at 694 (¶ 5) (quoting ***Mullins v. Ratcliff***, 515 So. 2d 1183, 1189 (Miss. 1987)).  "A trial court's dismissal of a motion for post-conviction relief will not be reversed absent a finding that the trial court's decision was clearly erroneous." ***Jackson v. State***, 67 So. 3d 725, 730 (¶ 16) (Miss. 2011) (citing ***Brown v. State***, 731 So. 2d 595, 598 (¶ 6) (Miss. 1999)).  In the case *sub judice*, the trial judge found that the witness lacked credibility and discounted his testimony. Without that testimony, the trial judge found no good cause existed to believe that the jury was exposed to extraneous prejudicial information or to warrant opening an investigation.

> **Whether Roach made a prima facie case of extraneous influence on the jury such that the trial court was required to reconvene the jury to determine whether it was reasonably possible that the information altered the verdict.**

¶16.    In his petition for certiorari, Roach asserts that the Court of Appeals erred in affirming the trial court "for the reasons stated in the dissent by [Judge] Carlton," and he asserts that the case should be remanded "for an evidentiary hearing to determine whether it was reasonably possible that the extraneous communication testified to by Derrick Tate altered the verdict."  We recognize a "general reluctance" to reconvene and question jurors "for potential instances of bias, misconduct[,] or extraneous influences" after a verdict has been reached, and such inquiries should not be entertained where it is a "mere fishing expedition."

7

*Gladney v. Clarksdale Beverage Co., Inc.*, 625 So. 2d 407, 418 (Miss. 1993) (internal citations omitted). We also recognize that "[p]ublic policy requires a finality to litigation." *Payton v. State*, 897 So. 2d 921, 955 (¶ 135) (Miss. 2003) (citing *Martin v. State*, 732 So. 2d 847, 852 (Miss. 1998)).

¶17. The need for finality notwithstanding, the Court has established a procedure for trial judges to employ when allegations of juror misconduct or extraneous information arise. *Gladney*, 625 So. 2d at 418. When the trial court is made aware of potential juror misconduct or improper influence on the jury, the first step is to determine whether an investigation is warranted. *Id.* An investigation is warranted if the trial judge finds that "good cause exists to believe that there was in fact an improper outside influence or extraneous prejudicial information." *Id.* at 419. If the trial court determines there is no "threshold showing of external influences," the inquiry stops there. *Id. See also Payton*, 897 So. 2d at 954 (¶ 135). If the trial judge has "good cause to believe" there was improper influence on the jury, the court should conduct a post-trial hearing. *Gladney*, 625 So. 2d at 419. The second step is to determine whether the communication was made and the nature of the communication. *Id.* Finally, if the investigation reveals that the communication was made, the court must determine whether it was reasonably possible that the communication altered the verdict. *Id.*

### A. Trial court and opposing counsel should be made aware of potential juror misconduct as expeditiously as possible.

¶18. As a preliminary matter, we note that "the trial court and opposing counsel must be made aware of any potential juror misconduct when this evidence is manifested." *Gladney*, 625 So. 2d at 418. "[I]f a juror approaches an attorney for one of the parties or the court

8

itself, or if either subsequently learns such through alternative means, all parties involved should be made aware of the allegation as expeditiously as possible." *Id.* The alleged incident occurred during Roach's trial on September 30, 2004. Preston Roach testified that the first mention of the incident occurred immediately after the trial and sentencing, when Tate approached Roach's family outside the courthouse. Preston testified that he told counsel about Tate's statement between 2004 and 2006, while the direct appeal was ongoing. Tate's affidavit was not obtained until March 31, 2010. Roach's motion for post-conviction relief was filed on September 16, 2010, nearly six years after his trial.

¶19. In a recent case before the Court, the jury verdict was returned on June 3, 2009, a juror's affidavit disclosing potential juror misconduct was taken on June 5, 2009, and a motion notifying the court of the misconduct was filed on June 12, 2009. *Merchant v. Forest Family Practice Clinic, P.A.*, 67 So. 3d 747, 753 n.9 (Miss. 2011). Although the timeliness of the motion was not an issue on appeal, we took the opportunity to advise counsel that the court and opposing counsel should be made aware of potential juror misconduct when the evidence is manifested, implying that notifying the court of juror misconduct seven days after the juror's affidavit was taken was not "as expeditiously as possible." *Id.* (quoting *Gladney*, 625 So. 2d at 418).

¶20. Given Preston's testimony that he knew of the alleged incident immediately after the trial and that he informed Roach's counsel about the alleged incident while the direct appeal was ongoing, the State and the circuit court were not "made aware of the allegation as expeditiously as possible." *Gladney*, 625 So. 2d at 418. It would not have been error for the trial court to dismiss the issue for failure to notify the court when evidence of the alleged

9

misconduct manifested. However, to ensure Roach his constitutional right to an impartial jury, the trial judge considered the issue. *See* Miss. Const. art. 3, § 26. Likewise, we will review the merits of the issue here.

**B. Roach did not prove that there was good cause to believe the jury received extraneous information or was improperly influenced.**

¶21. "In any trial there is initially a presumption of jury impartiality." *Carr v. State*, 873 So. 2d 991, 1005 (¶ 38) (Miss. 2004) (quoting *United States v. O'Keefe*, 722 F.2d 1175, 1179 (5th Cir. 1983)). To warrant an investigation, the party contending misconduct occurred "must make an adequate showing to overcome the presumption in this state of jury impartiality." *Gladney*, 625 So. 2d at 418. The Court has held:

> At the very minimum, it must be shown that there is sufficient evidence to conclude that good cause exists to believe that there was in fact an improper outside influence or extraneous prejudicial information. . . . Although a minimal standard of a good cause showing of specific instances of misconduct is acceptable, the preferable showing should clearly substantiate that a specific, non-speculative impropriety has occurred.

*Id.*

¶22. The evidence in the instant case regarding the alleged conversation between Tate and the officers is not overwhelming. Tate testified that he did not recognize the names of the officers identified in his affidavit, and he admitted that he did not supply the officers' names to the investigator. The investigator testified that he determined from the trial court record which officers were called as witnesses at the trial and inserted those names in the affidavit. Further, Tate admitted that he did not read the affidavit before he signed it. Lieutenant Spooner could not recall discussing Roach's possible sentence with another officer in the

10

hallway during the trial, and he testified that he would not have speculated that Roach's sentence would be between five and eight years based on what he knew about the case.

¶23.    Tate was questioned repeatedly – by his attorney, the State's attorney, and the judge – about whether the officers' alleged comments influenced his decision to vote guilty. Rule of Evidence 606 does not permit "any inquiry into the internal deliberations of the jurors." *Gladney*, 625 So. 2d at 419. "[A] juror may testify on the question [of] whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." Miss. R. Evid. 606(b). But questioning of a juror must be limited to whether the communication was made and what it contained. *Gladney*, 625 So. 2d at 419. It is inappropriate and a violation of Rule 606(b) "for any juror to be questioned with regard to whether or not the extraneous information actually altered his verdict." *James v. State*, 912 So. 2d 940, 950-51 (¶ 18) (Miss. 2005). The trial court erred in allowing Tate to be questioned about how the alleged extraneous information affected his deliberations.

¶24.    Although the judge erred by asking improper questions about Tate's deliberations, the judge believed that the multiple contradictions in Tate's account undermined his claim of extraneous prejudicial information. The only evidence supporting Roach's claim that Tate received extraneous information was from Tate. Lieutenant Spooner's testimony did not corroborate Tate's story; and Tate testified that he did not tell the other jurors about the alleged conversation or the possible five-to-eight-year sentence, so they could not corroborate his testimony. The circuit court held that Roach "failed to prove sufficient facts upon which" it could grant relief on the newly discovered evidence claim. Under the facts

11

presented, and giving deference to the trial judge's determination of the credibility of witnesses, we cannot say that the trial judge erred in concluding that Roach failed to prove that there was good cause to believe the jury had been exposed to extraneous prejudicial information.

### C. The evidence was not sufficient to warrant opening an investigation or reconvening the jury.

¶25. Because Roach failed to make an adequate showing of improper influence on the jury, there is no need to address whether the verdict was altered or the jury must be reconvened. *See* **Gladney**, 625 So. 2d at 419. However, Roach relies on Judge Carlton's dissent to argue that the case should be remanded for an evidentiary hearing and that the full jury should be reconvened, so we briefly address that point. Judge Carlton relied heavily on **James v. State**, 912 So. 2d 940 (Miss. 2005), which is distinguishable from the instant case.

¶26. In December 1995, James was charged with the murder of two children. **Id.** at 943 (¶ 4). The trial court allowed James to sever the counts and try the cases separately. **Id.** During the first trial, "[g]reat efforts were taken to make sure that no one mentioned any alleged injuries to [the second child] in the presence of the jury." **Id.** Jury selection began on July 8, 1996, and the potential jurors were questioned about their knowledge of the case. **Id.** at 943 (¶ 5). At the conclusion of the trial, in which the State's case had been "based entirely on circumstantial evidence," the jury found James guilty of capital murder, and he was sentenced to life in prison. **Id.** at 944 (¶ 6).

¶27. The day after the trial, defense counsel learned that the jury may have been exposed to extraneous prejudicial information. **Id.** at 944 (¶ 7). The court was informed, and a

hearing was held on August 14, 1996, at which venire member Wanda Conway was called to testify. *Id.*

> Conway explained that on July 9, 1996, she went to lunch with another prospective juror and Juror Shawn Watson. . . . Contrary to the trial court's instructions, the women discussed the case for approximately ten minutes during their lunch. Watson stated that she did not remember the case at all. The other women discussed what they had heard in the media, including that James was accused of murdering another child. . . .
>
> Conway also testified that later that afternoon the entire group was sent to sit in another courtroom . . . while the trial court and attorneys were conducting individual voir dire, which took several hours. Conway testified that she heard many members of the venire discussing the case and that there were two children involved. She overheard a woman tell a man, who was ultimately selected as a juror, that James was accused of killing two young children.
>
> Conway testified that she spoke to Watson the day after the trial ended. Watson told her that she had doubts about James' guilt and thought the mother should be investigated. Watson complained that some members of the jury knew about the second child and kept bringing it up in the jury room. Watson told Conway that several jurors argued that James was guilty because "it was two children." . . . Watson told Conway that several of the jurors who saw the docket sheet discussed it in the jury room and stated that it indicated that James was charged with something else. Watson said the docket sheet said "one of two, or first case, or something like that."

*Id.* at 944-45 (¶¶ 7-9). At the end of the hearing, the trial court found "that there had not been a threshold showing that further inquiry was necessary." *Id.* at 945 (¶ 10). James appealed, and the Court of Appeals reversed and remanded with instructions for the trial court to "reconvene and poll the jury regarding exposure to extraneous information." *Id.* at 946 (¶ 13). We agreed that "Conway's testimony more than satisfied the minimum requirements of *Gladney* and provided a sufficient basis for the trial court to hold a hearing" to determine whether extraneous information had been introduced to the jury. *Id.* at 951 (¶ 19) (quoting *James v. State*, 777 So. 2d 682, 700 (Miss. Ct. App. 2000)).

13

¶28.    In the instant matter, Tate testified about a two-or-three-sentence conversation that allegedly had occurred six years earlier.  Tate testified that he did *not* tell other jurors about the five-to-eight-years comment, and he only speculated that "other people" may have overheard his alleged interaction with the officers.  There was no evidence that other jurors actually overheard the conversation.  Tate's testimony was not corroborated by the officers or by any other evidence.  Conversely, Conway testified only one month after trial, and her testimony pertained to multiple statements and occurrences, including: that she and other potential jurors had discussed the second child during voir dire; that members of the jury had discussed the second child while waiting in a separate courtroom during individual voir dire; that members of the jury kept mentioning the second child in the jury room; that some jurors saw James listed twice on the docket sheet; and that Watson heard other jurors say James was guilty because two children had been killed.  Further, Conway's testimony was confirmed by other jurors.

¶29.    The evidence in the case at hand does not rise to the level of the evidence in *James*.  Tate's testimony did not satisfy the minimum requirements of *Gladney* and did not provide "a sufficient basis for the trial court to hold a hearing for the purpose of determining whether extraneous prejudicial information was introduced into the jury's deliberations[.]" *James*, 912 So. 2d at 951 (¶ 19) (quoting *James I*, 777 So. 2d at 700).  Again, under the facts presented, and giving deference to the trial judge's determination of the credibility of witnesses, we cannot say that the trial judge erred in concluding that Roach failed to present sufficient evidence to warrant opening an investigation or to warrant reconvening the jury.

**Conclusion**

14

¶30. The circuit court's denial of Roach's motion for post-conviction relief based on newly discovered evidence that a juror was exposed to extraneous information was not clearly erroneous. The circuit court's denial of Roach's motion for post-conviction relief and the Court of Appeals' judgment affirming it are affirmed.

¶31. **AFFIRMED.**

**WALLER, C.J., RANDOLPH, P.J., LAMAR AND PIERCE, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., CHANDLER AND KING, JJ.**

**KITCHENS, JUSTICE, DISSENTING:**

¶32. The majority finds that the trial court did not err when it determined that Jimmie Roach had failed to make a threshold showing that the jury in his trial was exposed to extraneous, prejudicial information. With respect, I disagree. Juror Derrick Tate consistently testified that he was exposed to outside (and radically incorrect) information regarding the sentence that Roach would receive if the jury found him guilty. The severity or leniency of a defendant's possible sentence is purposely withheld from juries exactly because of its considerable potential to influence their verdicts. Because I believe that Roach made a threshold showing that at least one juror was exposed to extraneous and presumptively prejudicial information, and the trial court erred in finding otherwise, I respectfully dissent.

¶33. Tate was asked multiple times by the defense, the prosecution, and the court, how and to what extent his knowledge of Roach's purported sentence affected his deliberation. As the majority correctly finds, this was a direct violation of Mississippi Rule of Evidence 606(b), which prohibits inquiry into the effect of extraneous information upon a juror's decision. The only thing to which Tate properly could have testified is whether he was exposed to outside

15

information, what the information was, how he was exposed to it, and whether he told the rest of the jury. The trial court erred when it permitted Tate to testify about the effect the extraneous information might have had on his deliberation and ultimate decision. The court compounded the error when it relied upon Tate's "effect testimony" regarding the effect the information had on his decision in deciding to deny relief to Roach:

> I asked him a direct question of how much – if this contact occurred, how did it affect his – his deliberations. He said none at all. [Defense Counsel] asked him the same question. He said it affected it a little bit. [The Prosecutor] asked him the same question. He said it didn't affect it at all.
>
> So if Mr. Tate had just been consistent with what is written in his affidavit, I think this would have been a clear-cut case — that it would have been — the relief would have been granted. But unfortunately Mr. Tate equivocated, as [Defense Counsel] said, on more than one occasion. And on that basis I can't consider his testimony because he continued to tell whoever asked him the question what they wanted to hear at that time.

¶34. Thus, the trial judge acknowledged that he did not consider Tate's testimony because Tate had testified inconsistently about the effect his knowledge of Roach's probable sentence had on his decision. Had the judge properly restricted Tate's testimony, the testimony would have shown only that Tate heard a police officer say that Roach would receive five to eight years if convicted, that he was unsure about how he had heard that information, that the officer in question claimed not to remember making that statement, and that Tate did not relay that information to other jurors. It is true, as the majority notes, that the details of Tate's story regarding how he heard about Roach's potential sentence changed multiple times throughout the hearing.[1] However, he never wavered concerning the only relevant and material fact of the entire proceeding: he heard a police officer saying that Roach would be

---

[1]It is worth noting that this hearing was held more than six years after Roach's trial.

16

sentenced to between five and eight years if found guilty. Under what circumstances this information came to Tate is of less importance than that he was exposed to it at all. *See Brake v. Speed*, 605 So. 2d 28, 38 (Miss. 1992) ("[I]t is the nature of the information acquired and its relation to material issues in the case which controls, no matter whether the information was accidentally, casually or deliberately acquired."). Even if the trial court based its decision on the inconsistencies in how Tate actually heard the information, that decision still would be erroneous, because the manner in which Tate received the information was irrelevant to his possession of it. It is important to note that, in every version of his story, Tate claimed he heard the outside information from a police officer – an authority figure who most laypersons would deem to be in the know about such matters. Further, in making its decision, the trial court relied heavily on information that is forbidden from judicial inquiry. Because the trial court stated that, without Tate's equivocation regarding the influence the extraneous information had on his decision, it would be a "clear-cut case" in which relief would be granted, I find that the trial court's reliance on that prohibited information amounted to error.

¶35.    The type of information to which Tate was exposed was inherently prejudicial. The severity or leniency of a defendant's potential sentence is kept from jurors because they are charged with finding a defendant guilty or not guilty based only on the evidence and the judge's written instructions. Typically, sentencing is the province of the judge, and "[t]he sole duty of the jury [i]s to pass on the guilt or innocence of the accused." *Smith v. State*, 288 So. 2d 720, 722 (Miss. 1974). "[T]he jury should have no concern with the quantum of punishment to be imposed." *Marks v. State*, 532 So. 2d 976, 983 (Miss. 1988). In

17

determining the impropriety of a prosecutor's closing argument that a manslaughter conviction would not sufficiently punish a defendant the way that a murder conviction would, this Court has said that "[t]he question of punishment is categorically unrelated to whether the verdict should be murder or manslaughter." *Id.* at 984.[2] "The jury have nothing to do with, and should be told nothing of, the character or degrees of punishment in any case whatever . . . ." *Ellerbee v. State*, 79 Miss. 10, 30 So. 57, 58 (Miss. 1901).

¶36.    It is clear from our jurisprudence that juries must remain insulated from information regarding sentencing, precisely because such information can affect their verdicts. In this case, a juror heard from a police officer that Roach would get five to eight years if convicted. Given that Roach was eligible for, and actually received, *one hundred more years* than Tate heard that he would, I find that this extraneous information, which minimized the seriousness of the jury's verdict, was extremely prejudicial to Roach.[3] Additionally, this kind of outside information can cut both ways. Had Tate learned that Roach could be sentenced to 108 years upon conviction, and subsequently determined that he could not vote guilty due to the potential severity of the punishment, it is almost certain that the State would correctly contend that he was exposed to prejudicial, extraneous information.

¶37.    The fact that Tate testified that he did not tell other jurors about this information is irrelevant. It takes but one dissenting vote to cause a mistrial in a criminal case. URCCC

---

[2]The Court affirmed, however, because defense counsel made no contemporary objection to the closing argument and the issue was procedurally barred on appeal.

[3]This is not the only prejudicial information to which this juror was exposed. The entire jury witnessed Roach's main witness being arrested in court after testifying. *Roach v. State*, 7 So. 3d 911, 929 (Miss. 2009) (Kitchens, J. dissenting).

18

3.10. Moreover, we do not, nor should we, know the extent of Tate's influence on his fellow jurors during their deliberations. He may or may not have been a leader on this particular jury. Rule 606 prohibits any inquiry into the effect that extraneous information had on a jury's decision; so, we are left only with the information that, in this case, was improperly received by one member of the jury. Tate consistently testified that he heard a police officer say that Jimmie Roach would receive five to eight years if convicted. This is all that the trial court should have considered. It cannot reasonably be argued that, if true, this information was not prejudicial to Roach, as he actually was eligible for roughly fourteen to twenty times this sentencing range. Roach has shown "that there is sufficient evidence to conclude that good cause exists to believe that there was in fact an improper outside influence or extraneous prejudicial information." *Gladney v. State*, 625 So. 2d 407, 418 (Miss. 1993).

¶38. Because Roach's trial occurred nearly nine years ago, a new hearing with the jury to determine if they were exposed to the information would be inefficient and of little value. Further, since we are prohibited from inquiring into the effect of any prejudicial information on their deliberations, I fail to see the value of such a hearing. *See Rutland v. State*, 60 So. 3d 137, 146 (Miss. 2011) (Kitchens, J. dissenting). Accordingly, well-established and sound Mississippi precedent requires us to assume that the extraneous information affected the juror's decision. Thus, the only remedy appropriate is for this Court to reverse Roach's conviction and remand for a new trial. Therefore, I respectfully dissent.

**DICKINSON, P.J., CHANDLER AND KING, JJ., JOIN THIS OPINION.**

19