JAMES, J.,
for the Court:
¶ 1. Dareous Rico Bryant was convicted of murder and sentenced to life imprisonment in the custody of the Mississippi Department of Corrections. Bryant filed a motion for a judgment notwithstanding the verdict and a motion for a new trial. The trial court denied his motion. Bryant now appeals raising the following issues: whether the trial court erred by not conducting a hearing on jury tampering and whether there was sufficient evidence to support the conviction. Finding no error, we affirm.
FACTS
¶2. On May 1, 2009, Bryant threw a birthday party at the Bee Hive Club in Shuqualak, Mississippi. Bryant arrived at the club between 9:30 and 10:00 p.m. Bryant gave Mary Nailer, the owner of the club, a gun and asked her if she would hold it for him. Nailer then hid the gun behind the bar away from the patrons. There are varied accounts of what happened next, but the salient facts are as follows. A group of female guests got into a fight that started in the club and moved outside. Bryant went outside to break up the fight. After Bryant returned to the club, another fight occurred between a person known only as “Lil G” and Jeremy Peyton. Lil G had a weapon, chased Peyton, and may have shot at him as they ran down the street in front of the club.
¶ 3. There were two additional fights; one of the fights, however, involved Bryant’s brother, Deon Bryant, and Hendricks Malone. Michael Taylor and the victim, Lamarco Tate, were with Malone during the confrontation. Malone and Deon had exchanged heated comments earlier in the evening. Bryant and Deon left the club together and walked toward the stop sign by the club where the confrontation between Malone and Deon had taken place. According to various witness statements, Deon punched Malone and then Tate punched Deon. According to Javacus Gillespie, a witness, after Tate punched Deon, Bryant pulled the gun from his waistband and shot Tate. After the incident, the club was closed for two weeks. Nailer testified that when she returned to the club, Bryant’s gun was missing.
¶ 4. At trial, Bryant testified that once Tate was shot, multiple people started shooting; however, he did not identify who was shooting. Bryant testified that he did not have a gun on him at the time of the shooting. Further, Bryant stated that he did not know Tate and bore no ill will against him. According to Bryant, Deon was not hit by Tate, and Bryant stood behind his brother when Tate was shot.
¶ 5. After a jury trial, Bryant was convicted of murder and sentenced to life imprisonment. Bryant filed a motion for a judgment notwithstanding the verdict (JNOV) and a new trial alleging juror misconduct and challenging the weight and sufficiency of the evidence. An additional motion addressing the issue of juror misconduct was filed. The trial court denied all of the motions. Bryant appeals.
DISCUSSION
I. Whether the trial court erred by not conducting a “fair and adequate” hearing on Bryant’s jury-tampering allegations.
¶ 6. Bryant argues that the trial court was put on notice of the outside *1028 influence on members of the jury. Bryant also asserts that the trial court erred when it refused to question the two juror witnesses available at the hearing on the motion for a JNOV.. Further, Bryant contends that the inquiry actually conducted should have included the jurors instead of only the bailiffs. By failing to do so, Bryant argues, the trial court did not conduct a “fair and adequate” hearing on the allegations of outside influence on the jury.
¶ 7. Bryant cites Mississippi Rule of Evidence 606(b):
Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury’s deliberations or to the effect of anything upon that or any other juror’s mind or emotions as influencing assent to or dissent from the verdict or indictment or concerning the juror’s mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury’s attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror’s affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.
“The purpose of Rule 606(b) is to protect jurors from fear of being interrogated about their actions or mental processes and allow the jury to deliberate freely.” Rutland v. State, 60 So.3d 137, 142 (¶ 20) (Miss.2011).
¶ 8. In Roach v. State, 116 So.3d 126, 132 (¶ 17) (Miss.2013), the supreme court outlined the process employed by trial courts when the issues of juror misconduct or extraneous information arise. First, the trial court is to determine whether an inquiry is warranted. Id. “An investigation is warranted if the trial judge finds that ‘good cause exists to believe that there was in fact an improper outside in.-fluence or extraneous prejudicial information.’” Id. If the trial court finds that there is no “threshold showing of external influences, the inquiry stops there.” Id. However, if good cause is shown, then the trial court should conduct a post-trial hearing to determine if there was improper influence. Id.
¶ 9. There is a presumption of jury impartiality in any trial. Id. at 133 (¶ 21). To meet the threshold showing, “the party contending misconduct occurred ‘must make an adequate showing to overcome the presumption in this state of jury impartiality.’ ” Id. “At the very minimum, it must be shown that there is sufficient evidence to conclude that good cause exists to believe that there was in fact an improper outside influence or extraneous prejudicial information.” Gladney v. Clarksdale Beverage Co., 625 So.2d 407, 419 (Miss.1993).
¶ 10. At trial, when the jury was initially polled, juror Kennedy Gilkey voted not guilty. After Gilkey gave his vote, the jury was sent back to deliberate further. When the jury came back the second time, it was a unanimous verdict of guilty.
¶ 11. At the hearing on the motion for a JNOV, Bryant stated that his family members came into contact with certain jurors and learned that someone informed a member of the jury that the defendant had pled guilty and that they should return a verdict of guilty. There is, however, no information in the record as to who the person was that informed the jury of Bryant’s supposed plea or the juror to whom it was said. Although two jury members were available to testify, up to that day in court, no evidence had been *1029 submitted to support any of the allegations.
¶ 12. Further, there is nothing in the record to indicate that Bryant’s counsel actually spoke to or secured any statements from the jurors who were available to testify. Additionally, the trial judge did make an inquiry into the juror-misconduct allegation by questioning both of the bailiffs who were stationed outside the jury room. The trial judge stated that in Nox-ubee County, where the trial was held, there was only one way in and out of the jury-deliberation room. Therefore, the bailiffs could have seen who went in and testified that they were stationed outside of the room. They did not see anyone interfere with the deliberations. Accordingly, we find that the trial court conducted a fair and adequate inquiry into Bryant’s allegations of juror misconduct.
II. Whether there was insufficient evidence to support a guilty verdict.
¶ 13. A motion for a JNOV challenges the legal sufficiency of the evidence. Johnson v. St. Dominics-Jackson Mem’l Hosp., 967 So.2d 20, 22 (¶3) (Miss.2007). The standard of review for a denial of a motion for a JNOV is de novo. Id. The Mississippi Supreme Court has stated “this Court will affirm the denial of a motion for [a] JNOV if there is substantial evidence to support the verdict.” Daniels v. State, 107 So.3d 961, 963 (¶ 10) (Miss. 2013). “Substantial evidence is information of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions.” Id. at (¶ 11).
¶ 14. When reviewing a motion for a JNOV, “the trial judge is required to accept as true all of the evidence that is favorable to the State, including all reasonable inferences that may be drawn therefrom, and to disregard evidence favorable to the defendant.” Mitchell v. State, 803 So.2d 479, 484 (¶ 12) (Miss.Ct.App.2001). “We will reverse only where ‘with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair minded jurors could only find the accused not guilty.’ ” Dampeer v. State, 989 So.2d 462, 464 (¶ 7) (Miss.Ct.App.2008).
¶ 15. Bryant also filed a motion for a new trial. “A motion for a new trial challenges the weight of the evidence.” Lafont v. State, 9 So.3d 1143, 1144-45 (¶ 6) (Miss.Ct.App.2008). The standard of review applied to a denial of a motion for a new trial is abuse of discretion. Id. “We will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Id.
¶ 16. At trial, there were several eyewitnesses to the shooting. The State also presented expert testimony from Dr. Lisa Funte, who testified about the injuries sustained by Tate. Bryant presented several witnesses and testified in his defense. “[I]t is within the province of the trial jury to determine the weight and worth of the testimony to pass upon contradictions in the evidence, and credibility of witnesses.” Martin v. Ill. Cent. R.R. Co., 246 Miss. 102, 110, 149 So.2d 344, 348 (1963). The jury serves as a fact-finder, and it is within their discretion to decide whether or not a witness is credible. The jury did not accept Bryant’s theory of the case and entered a guilty verdict. In viewing the evidence in the light most favorable to the State, we find that there was sufficient evidence to support Bryant’s conviction of murder.
*1030 CONCLUSION
¶ 17. While Bryant argues he did not receive a fair and adequate inquiry into the allegation of juror misconduct, the jury was polled, and during the hearing on the motion for a JNOV, the bailiffs who supervised the jury during their deliberations were questioned and could not identify any extraneous influence. Although Bryant contends that the evidence presented at trial was insufficient, the State presented eyewitnesses and expert testimony supporting the verdict. Accordingly the judgment of the Noxubee County Circuit Court is affirmed.
¶ 18. THE JUDGMENT OF THE NOXUBEE COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J, IRVING and GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL and FAIR, JJ., CONCUR.