# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-01811-COA

ANTHONY MURRY A/K/A ANTHONY JAMES MURRAY     APPELLANT

v.

STATE OF MISSISSIPPI           APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 10/28/2015 |
| TRIAL JUDGE: | HON. WILLIAM A. GOWAN JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF AGGRAVATED ASSAULT AND SENTENCED TO FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TEN YEARS TO SERVE, FIVE YEARS SUSPENDED, AND FIVE YEARS OF SUPERVISED PROBATION |
| DISPOSITION: | REVERSED AND REMANDED - 04/18/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

EN BANC.

CARLTON, J., FOR THE COURT:

¶1. A jury in the Hinds County Circuit Court, First Judicial District, found Anthony Murry guilty of aggravated assault. *See* Miss. Code Ann. § 97-3-7(2)(b) (Rev. 2006). On appeal from his conviction and sentence, Murry raises the following issues: (1) whether the circuit

court erred by refusing to grant him a new trial due to juror misconduct; (2) whether the circuit court erred by denying his motions to compel evidence and to grant a continuance; (3) whether the circuit court failed to adequately instruct the jury; and (4) whether the verdict was against the overwhelming weight of the evidence.

¶2.    Upon review, we find dispositive Murry's first assignment of error regarding the circuit court's failure to grant him a new trial due to juror misconduct.  During Murry's trial, improper contact occurred between a juror and Murry's fiancée.  In denying Murry's new-trial motion, the circuit court misapplied the relevant standard to determine "whether it was reasonably possible that the communication altered the verdict." *Roach v. State*, 116 So. 3d 126, 132 (¶17) (Miss. 2013) (citing *Gladney v. Clarksdale Beverage Co.*, 625 So. 2d 407, 419 (Miss. 1993)).  As a result, we reverse Murry's conviction and sentence and remand this case for a new trial.

**FACTS**

¶3.    On June 7, 2014, Murry shot Marquavious Brent in the ankle during an altercation. A grand jury indicted Murry for aggravated assault.  At Murry's trial, the jury considered all the evidence and testimony presented and then found Murry guilty of aggravated assault. The circuit court sentenced Murry to fifteen years in the custody of the Mississippi Department of Corrections, with ten years to serve, five years suspended, and five years of supervised probation.

¶4.    Murry subsequently filed a motion for a judgment notwithstanding the verdict (JNOV)

2

or, in the alternative, a new trial. In addition to his other assignments of error, Murry claimed in his motion that juror misconduct denied him the right to a fair trial. Murry alleged that, during the course of the trial, Dennis Harris, one of the jurors, initiated improper contact with Murry's fiancée, Laronda Brooks, and tried to begin a relationship with Brooks. As a result of this alleged misconduct, Murry argued that Harris lost his ability to remain fair and impartial and tainted the jury. To support his claims, Murry attached to his motion Brooks's affidavit, copies of pictures that Harris sent Brooks, and copies of text messages between Harris and Brooks.[1]

¶5. The circuit court held a hearing solely on Murry's allegation of juror misconduct. Brooks testified that she first encountered Harris on Tuesday, October 13, 2015, on the second day of Murry's trial. According to Brooks, Harris initiated contact with her in the hallway during a trial recess. Brooks stated that Harris asked her whether he was too late. Brooks testified that she thought Harris was asking whether he was late returning to the courtroom after the recess. As a result, Brooks said she responded, "No, you're not too late." Brooks stated that Harris then told her he was not talking about returning to the courtroom on time, and he asked for her phone number. Brooks testified that she gave Harris her phone number and told him that she was "with the [D]efendant." Brooks further testified that she

---

[1] The record reflects that Harris sent Brooks several explicit text messages. One of Harris's text messages to Brooks stated, "Treat me right[,] an[d] I will take care of you." Another of Harris's text messages to Brooks said, "You [will not] have to worry about anything[,] an[d] I [am] not just saying something." In addition, the record reflects that Harris sent Brooks a nearly naked picture of himself.

was unaware at the time of their initial conversation that Harris was a juror in Murry's case.

¶6.     Brooks stated that Harris called her Tuesday night after their initial contact and that the two spoke for about fifteen minutes. She said that, during their conversation, Harris disclosed to her that he was a juror in Murry's trial. In addition, Brooks stated that Harris told her that he felt Murry was innocent. Brooks also testified that Harris called her again the following night, on Wednesday, after the jury reached a verdict in Murry's case. According to Brooks, Harris sent her text messages saying she did not have to worry and that, if she treated him right, he would take care of her. She further stated that Harris sent almost nude pictures of himself and asked her to send a picture of herself to him.

¶7.     Brooks testified that she first tried to contact the public defender's office on the day of Harris's initial contact. However, Brooks testified that the defense attorney, Dennis Martin, was out of the office. Brooks then stated that she told another of Murry's attorneys, Candace Gregory-Mayberry, about the contact the following day as they left the courtroom after the jury's verdict. Brooks said she told Gregory-Mayberry that she (Brooks) felt the verdict was not right since Harris had said he felt that Murry was innocent. Brooks stated that, after her disclosure, the defense attorneys instructed her to come to their office and sign an affidavit about her contact with Harris.

¶8.     Despite Brooks's testimony about when she told the defense of her contact with Harris, Gregory-Mayberry testified differently. Under oath, Gregory-Mayberry denied that Brooks told her about Harris's alleged misconduct as they left the courtroom the day of the

4

jury verdict. Instead, Gregory-Mayberry testified that she first learned of the contact the next day on Thursday, October 14, 2015, and that Brooks must have been confused as to the timing of the disclosure.

¶9. As the record reflects, Brooks and Harris continued their communication with one another until October 18, 2015, which was four days after the jury reached its verdict. Brooks signed her affidavit on October 19, 2015. Although she was present in the courtroom after the communication with Harris began, Brooks stated that she failed to notify the defense or the court earlier because she was unsure of what to do.

¶10. Harris also testified about the allegation of juror misconduct and never denied his communication with Brooks during the trial. However, Harris stated that Brooks initiated the contact with him. Harris testified that he was standing in the hallway during a recess on the second day of trial when an unfamiliar young woman approached him and asked for his phone number. Harris said he gave the woman his phone number and that she called him later that evening. According to Harris, Brooks told him during their conversation that she was Murry's sister. Harris said that he then cut off contact with Brooks until the jury had reached its verdict the following day. Despite Brooks's testimony to the contrary, Harris stated that he never told Brooks he thought Murry was innocent.

¶11. Harris testified that Brooks also called him Wednesday night after the jury reached its verdict. Harris said that he missed Brooks's call and that, when he tried to call her back, she did not answer. However, Harris testified that Brooks then returned his missed call.

Harris claimed that he only sent pictures of himself to Brooks because she asked him to do so after they discussed working out and his job as a personal trainer. Harris testified that his last communication with Brooks was around October 18, 2015, which was four days after the trial ended. Despite the circuit court's instruction to report any improper contact, Harris stated he did not report the contact with Brooks because he never discussed the jury's deliberations with her and because he felt an obligation to finish his jury service.

¶12. After considering the testimony presented at the evidentiary hearing, the circuit court entered its order on Murry's motion for a JNOV or a new trial. While acknowledging its concern over the improper communications between Brooks and Harris, the circuit court questioned the credibility and veracity of Brooks's testimony, the timing of her disclosure about the contact, and whether she purposefully initiated the contact. The circuit court found that Brooks "had more than ample opportunity to inform [Murry's] counsel and/or this [c]ourt" about the contact prior to the jury's verdict. Although Brooks claimed she told the defense about the contact while exiting the courtroom after the jury verdict, the circuit court dismissed her statement as false since Gregory-Mayberry, as an officer of the court, denied learning of the improper contact "prior to the verdict being returned or while in the courthouse."

¶13. In addition to questioning Brooks's credibility, the circuit court concluded that her contact with Harris failed to alter the jury's verdict. The circuit court found that the eleven other jurors had not been exposed to the improper contact and that they all found Murry

6

guilty. The circuit court also determined that both Harris and Brooks "generally contend[ed] the trial was not discussed" and that Harris had denied telling Brooks he thought Murry was innocent.

¶14. Based on its findings, the circuit court denied Murry's motion for a JNOV or a new trial. Aggrieved, Murry timely appeals his conviction and sentence.

## DISCUSSION

¶15. In addition to his other claims raised on appeal, Murry argues that the circuit court misapplied caselaw in denying his motion for a new trial based on juror misconduct. We review the circuit court's denial of Murry's new-trial motion for an abuse of discretion. *See Dependable Abrasives Inc. v. Pierce*, 156 So. 3d 891, 895 (¶12) (Miss. 2015). Because we find Murry's argument on this issue dispositive, we decline to address the merits of his remaining assignments of error.

¶16. When inquiring into the validity of a jury's verdict, Rule 606(b)(1) of the Mississippi Rules of Evidence provides:

> [A] juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

However, Rule 606(b)(2) states that a juror may testify about the following: (1) whether "extraneous prejudicial information was improperly brought to the jury's attention" or (2) whether "an outside influence was improperly brought to bear on any juror."

7

¶17. The Mississippi Supreme Court has previously explained the procedure a trial court should follow when claims of juror misconduct or extraneous information arise. *Roach*, 116 So. 3d at 132 (¶17). The trial court first determines whether an investigation is warranted. *Id.* "An investigation is warranted if the trial judge finds that 'good cause exists to believe that there was in fact an improper outside influence or extraneous prejudicial information.'" *Id.* (quoting *Gladney*, 625 So. 2d at 419). The trial court's inquiry stops if it finds "no threshold showing of external influences[.]" *Id.* However, where the trial court possesses "good cause to believe there was improper influence on the jury, the court should conduct a posttrial hearing" and "determine whether the communication was made and the nature of the communication." *Id.* If the court's "investigation reveals that the communication was made, the court must determine whether it was reasonably possible that the communication altered the verdict." *Id.* We review the "[t]he trial court's decision as to whether it is reasonably possible the communication influenced the juror" for an abuse of discretion. *Wallace v. State*, 166 So. 3d 520, 527 (¶31) (Miss. Ct. App. 2014).

¶18. In the present case, the circuit court found good cause existed to conduct a posttrial evidentiary hearing on Murry's claim of juror misconduct. The circuit court served subpoenas on both Brooks and Harris. Although Brooks and Harris both testified that they communicated with one another during Murry's trial, their accounts differed as to who initiated the contact during the trial recess on Tuesday and who called the other later that same evening.

8

¶19. The record is unclear as to whether Harris and Brooks initially knew each other's relationship to Murry when they exchanged phone numbers. However, the circuit court found that they discovered the connection to Murry during their fifteen-minute phone conversation Tuesday evening. Brooks stated that Harris told her Tuesday night he was a juror in Murry's case. Although Harris testified that Brooks claimed to be Murry's sister rather than his fiancée, Harris nevertheless admitted that he learned during the conversation that Brooks had a close relationship with Murry. The record also clearly establishes that, regardless of whether Harris thought Brooks was Murry's fiancée or sister, he engaged in romantic overtures and communications with Brooks during the course of the trial.

¶20. Based on their testimony, the circuit court found that both Brooks and Harris generally contended that they never discussed the trial. Even so, the circuit court acknowledged Brooks's claim that Harris told her during their Tuesday-night conversation he believed Murry was innocent. For his part, however, Harris denied making any such statement to Brooks or anyone else. Harris did admit, however, that he sent Brooks text messages after the jury's verdict stating that Brooks did not need to worry and that, if she treated him right, he would take care of her. In addition, Harris sent Brooks several nearly nude pictures of himself and asked her to send him a picture of her. According to Harris, his statements were merely an attempt to be nice to Brooks and to reassure her following the verdict. He also testified that he only sent the pictures of himself, and the request for her picture, because the two had discussed his work as a personal trainer.

¶21. At the hearing, Brooks testified that she first tried to inform the public defender's office about the improper contact on Tuesday, the same day that the contact initially occurred. However, Brooks stated the attempt was unsuccessful because Murry's attorney was out of the office. Brooks further testified that she then informed the defense attorneys about the improper contact as they exited the courtroom following the jury's verdict. One of Murry's attorneys, though, testified that Brooks actually informed the defense of the improper contact the day after the jury's verdict and that Brooks must have been confused about the timing of her disclosure.

¶22. Despite conflicting testimony as to when she actually informed the defense about the improper contact with Harris, the record reflects that Brooks did, in fact, inform Murry's attorneys. By contrast, Harris, in direct violation of the court's instructions to the jury, never revealed his contact with Brooks until questioned about it during the evidentiary hearing. Even so, the circuit court faulted only Brooks for the failure to more timely disclose the improper contact. The circuit court stated that Brooks possessed "more than ample opportunity to inform [Murry's] counsel and/or this [c]ourt" but that she failed to do so. As a result, the circuit court questioned whether Brooks purposefully initiated the improper contact and waited until after the jury's verdict to report the communication. In addition, the circuit court found that Harris was the only juror exposed to the improper contact. The circuit court therefore concluded that, because the eleven other jurors were not exposed to the contact and still found Murry guilty, "it [was] not reasonably possible [the]

10

communication altered the verdict." As required by precedent, after determining that the improper contact occurred between Harris and Brooks, the circuit court should have further determined whether it was reasonably possible that the contact and communication altered the verdict. *See Roach*, 116 So. 3d at 132 (¶17).

¶23. Upon review, we find the circuit court abused its discretion by misapplying relevant caselaw to its determination of whether juror misconduct justified granting Murry a new trial. *See Dependable Abrasives*, 156 So. 3d at 895 (¶12). The undisputed testimony reflects that an improper romantic communication occurred between Harris and Brooks that displayed a motive for Harris to alter the verdict in this case. As the record demonstrates, Harris made romantic overtures to Brooks and sent her almost nude pictures of himself. Thus, all that remained was for the circuit court to "determine whether it was reasonably possible that the communication altered the verdict." *Roach*, 116 So. 3d at 132 (¶17) (citing *Gladney*, 625 So. 2d at 419). Although the circuit court acknowledged the proper standard in its judgment, the record nevertheless reflects that the court misapplied Mississippi caselaw and focused on improper bases to reach its decision. Instead of determining whether it was reasonably possible that the communication between Brooks and Harris altered the verdict, the circuit court emphasized the timing of Brooks's disclosure and whether she had purposefully initiated the contact.

¶24. Regardless of who first initiated the contact and when the contact was disclosed, the record is clear that inappropriate contact and communication repeatedly occurred between

Harris and Brooks during and after Murry's trial and that this improper contact resulted in juror misconduct. The established contact between Harris and Brooks evidences a motive on Harris's behalf to alter or impact the verdict to pursue his interest in Brooks. As stated, following the jury's verdict, Harris sent Brooks almost nude pictures of himself and suggestive messages stating that he would take care of her if she treated him right.

¶25. The State and Federal Constitutions guarantee Murry the right to a fair trial before an impartial jury. *See James v. State*, 912 So. 2d 940, 950 (¶17) (Miss. 2005). However, based upon a review of the applicable standard set forth in Mississippi caselaw, the record reflects it is reasonably possible that the communication between Brooks and Harris altered the verdict in this case. *See Gladney*, 625 So. 2d at 419. As a result, we find the circuit court abused its discretion by denying Murry's new-trial motion. *See Dependable Abrasives*, 156 So. 3d at 895 (¶12). We therefore reverse the circuit court's judgment and remand this case for a new trial.

¶26. **THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT, IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**IRVING, P.J., ISHEE, FAIR, GREENLEE AND WESTBROOKS, JJ., CONCUR. GRIFFIS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, C.J., BARNES AND WILSON, JJ.**

**GRIFFIS, P.J., DISSENTING:**

¶27. Because I am of the opinion the trial court did not abuse its discretion, I respectfully dissent from the majority's decision to reverse and remand this case for a new trial.

12

¶28. As the majority says, we must review the "[t]he trial court's decision as to whether it is reasonably possible the communication influenced the juror" for an abuse of discretion. *Wallace v. State*, 166 So. 3d 520, 527 (¶31) (Miss. Ct. App. 2014).

¶29. In its order, the trial court ruled:

> This Court served subpoenas upon the juror and the fiancé[e] and held an evidentiary hearing after receiving Defendant's motion which contained an affidavit from his fiancé[e] as well as text messages, including pictures, between her and a male juror.
>
> The juror and fiancé[e]'s accounts as to which one of them initiated the initial contact in the hallway the Tuesday of trial conflict[;] obviously each blames the other. What is not in dispute is that they did end up with each other's cell phone numbers and did talk Tuesday night for approximately fifteen minutes, and even if they did not know who each other were when they exchanged numbers, the fiancé[e] admits the juror told her Tuesday night he was on the jury. He admits he knew that she was in some way related to the Defendant.
>
> The fiancé[e] contends she told trial counsel of the communication Wednesday, while in the courthouse, a fact that counsel, as an officer of the court, vehemently denies. The jury of ten (10) women and two (2) men returned a guilty verdict Wednesday afternoon. The juror and fiancé[e] talked again a few days later. Both generally contend the trial was not discussed but the fiancé[e] contends the juror told her he thought the Defendant was innocent. The juror denies this.
>
> This Court questioned the fiancé[e] extensively as to why she did not feel it proper to report the conduct prior to the jury returning the verdict. Despite all her contentions to the contrary, she had more than ample opportunity to inform her counsel and/or this Court and she failed to do so. This fact alone raises doubt in the Court's mind as to her motives. Further, this Court knows that she has given false testimony regarding at least one fact; the Court is bound to believe an officer of this court, that practices before it, when she testified she was not informed of the improper contact prior to the verdict being returned or while in the courthouse. It has occurred to this Court that perhaps the fiancé[e] is the one who purposefully initiated contact.

13

The Court listened to the evidence and denied the motion for directed verdict and JNOV on evidentiary grounds. Most importantly, the fact that eleven (11) jurors (ten (10) women and one (1) man) that were not exposed to this improper contact voted guilty persuades this Court to believe that "it is [not] reasonably possible this communication altered the verdict."

¶30.    I am of the opinion that the trial court followed the appropriate legal procedure and conducted a hearing to allow all relevant evidence to be introduced.  The learned trial judge heard testimony from both Brooks and Harris.  Neither Brooks nor Harris testified that Brooks ever attempted to influence Harris's decision as a juror.  Further, contrary to Brooks's claim that Harris knew that she was with the defendant, Harris testified that Brooks told him that Murry was her brother.  As a result, the trial judge found that a communication had occurred that should not have occurred.  However, the trial judge concluded that a new trial was not warranted because the jury's verdict was not a product of the improper communication.  The trial judge concluded that no part of the communication had, or could have had, any impact on the verdict.  The court also found that Brooks did not attempt to influence Harris's decision and that she did not offer any extraneous prejudicial information. Thus, the trial judge concluded that it was not reasonably likely that Brooks's conversations with Harris altered the verdict.

¶31.    Because I am of the opinion that the trial court did not abuse its discretion when it declined to grant a new trial after finding that it was not reasonably possible that the communication altered the verdict, I must respectfully dissent.  I would affirm the trial court's judgment.

14

**LEE, C.J., BARNES AND WILSON, JJ., JOIN THIS OPINION.**